RONALD HOLLISTER *v.* EDNA THOMAS ET AL.

RONALD HOLLISTER *v.* ACTION CONSTRUCTION, INC.
(AC 28821)

Flynn, C. J., and Harper and Beach, Js.

Argued April 28—officially released October 7, 2008

*Sandra L. Snaden,* with whom, on the brief, was *Hope C. Seeley,* for the appellant (plaintiff).

*J. Kevin Golger,* for the appellee (named defendant in the first case).

*Karen K. Clark,* with whom, on the brief, was *Frank G. Usseglio,* for the appellees (defendant Stanley Brown in the first case and defendant in the second case).

*Opinion*

HARPER, J. In this consolidated personal injury action, the plaintiff, Ronald Hollister, appeals from the judgments of the trial court rendered in favor of the

defendants Edna Thomas, Stanley Brown[1] and Action Construction, Inc., after the court granted the defendants' motions to strike portions of the plaintiff's complaints.[2] On appeal, the plaintiff claims that the court improperly struck portions of his fourth amended complaint. We affirm the judgments of the trial court.

In his fourth amended complaint, dated January 3, 2007, the plaintiff alleged the following facts, which are relevant to our discussion of the issue on appeal. On January, 7, 2005, the plaintiff, a firefighter for the city of Danbury, was dispatched to a condominium at 14 Skrepo Road in Danbury, where a fire had been reported. That residence was owned and occupied by Thomas. At the time of the fire, Thomas was in the process of remodeling her bathroom. She had hired Brown, a licensed plumbing contractor, to perform the renovation. Brown agreed to perform the plumbing and pipe installation work associated with the project and subcontracted the tile work and other remodeling aspects of the project to his agent, Thomas Janesky.

[1] The complaint also named "Stanley Brown, d/b/a Action Plumbing & Heating" as a defendant. "[I]t appears well settled that the use of a fictitious or assumed business name does not create a separate legal entity . . . [and that] [t]he designation [doing business as] . . . is merely descriptive of the person or corporation who does business under some other name . . . . [I]t signifies that the individual is the owner and operator of the business whose trade name follows his, and makes him personally liable for the torts and contracts of the business . . . ." (Internal quotation marks omitted.) *Monti* v. *Wenkert*, 287 Conn. 101, 135, 947 A.2d 261 (2008).

[2] The plaintiff brought two separate actions arising from the facts set forth in this opinion. One action was brought against Thomas, Adam Janesky, Thomas Janesky, Brown and Action Plumbing & Heating. The second action was brought against Action Construction, Inc. By agreement of the parties, the cases were consolidated by the court, *Mintz, J.*, on April 2, 2007. Thomas Janesky and Adam Janesky were named as defendants but are not parties to this appeal. The portions of the complaint that pertain to them still are pending. We also note that the city of Danbury requested permission to join the first action as an intervening plaintiff for workers' compensation purposes. That motion was granted by the court on April 11, 2006. The city is not a party to this appeal.

During the course of the renovation, some pipe valves unexpectedly leaked, and a flooding hazard arose. Rather than perform the plumbing repair work himself, however, Brown delegated it to Janesky. Thereafter, following Brown's instructions, either Adam Janesky or Thomas Janesky used a plumber's torch to repair some pipes and thereby ignited the January 7, 2005 fire to which the plaintiff responded.

After the fire began, rather than immediately calling for emergency services, Thomas delayed calling for help because she did not want the authorities to discover that she had failed to obtain permits for the remodeling project. Thomas also was concerned because she had an illegal structure in her condominium. Additionally, neither Adam Janesky nor Thomas Janesky immediately reported the fire. When the Danbury fire department did arrive, the fire had reached an advanced state, and an immediate physical danger was present to persons on the roof of the building. Seeing that danger, the plaintiff jumped from the fire truck and injured his knee. The plaintiff required surgery to treat his knee, and his injury likely is permanent in nature.

In his January 3, 2007 complaint, the plaintiff alleged, inter alia, negligence and recklessness on the part of Thomas, Adam Janesky and Thomas Janesky, and negligence on the part of Brown. In response to the plaintiff's complaint, Thomas filed a motion to strike the counts of the complaint that pertained to her. Likewise, Brown filed a motion to strike the counts of the complaint that pertained to him. On April 3, 2007, the court, *Radcliffe, J.*, issued a memorandum of decision in which it granted each defendant's motion to strike. As to Thomas, the court found that she did not owe a duty of care to the plaintiff. It noted that the allegations as to her were "too remote, as a matter of law, to be a substantial factor causing injury to the firefighter." The court further found that even if the injuries were foreseeable,

public policy considerations barred any liability on the part of Thomas. As to Brown, the court adopted the reasoning set out by the court, *Rodriguez, J.,* in its memorandum of decision granting the motion filed by Brown and Action Plumbing & Heating, Inc., to strike the counts contained in the amended complaint of January, 2006. The court, in that decision, reasoned that no relationship existed between Brown and either the Janeskys or Thomas such that a duty of care was created that would extend to the plaintiff. In its April 3, 2007 decision, the court also found that any additional allegations in the plaintiff's fourth amended complaint as to an agency relationship between Brown and the Janeskys did not cure the deficiencies contained in the earlier complaint. Following the court's April 3, 2007 decision, Thomas, Brown and Action Plumbing & Heating, Inc., filed motions for judgment, which were granted by the court, *Matasavage, J.,* on April 30, 2007.[3] This appeal followed.

We begin by setting forth the legal principles that govern our review. "A motion to strike challenges the

[3] As previously noted herein, the plaintiff originally commenced two separate actions against the various defendants, with the matters consolidated thereafter. See footnote 2. The plaintiff, however, did not file an amended complaint combining the causes of action against the defendants, and, consequently, there are two sets of operative complaints and two separate judgments. The judgment as to the plaintiff's January 3, 2007 fourth amended complaint naming Thomas, Brown and Action Plumbing & Heating, is addressed in this opinion. The plaintiff's complaint against Action Construction, Inc., mirrors the counts in the January 3, 2007 complaint as to Brown and Action Plumbing & Heating. Following consolidation, the parties agreed that the court's ruling as to the motions to strike filed by Brown, Thomas and Action Plumbing & Heating, likewise would apply to the motion to strike filed by Action Construction, Inc. As a result of that agreement, the court, *Matasavage, J.,* also rendered judgment in favor of Action Construction, Inc., on April 30, 2007.

Brown's actions that formed the basis of the allegations against him in the first case were also attributed to Action Construction, Inc., in the second action. Our discussion of the claims against Brown is dispositive of the plaintiff's appeal in the second action.

legal sufficiency of a pleading, and, consequently, requires no factual findings by the trial court. As a result, our review of the court's ruling is plenary. . . . We take the facts to be those alleged in the complaint that has been stricken and we construe the complaint in the manner most favorable to sustaining its legal sufficiency. . . . Thus, [i]f facts provable in the complaint would support a cause of action, the motion to strike must be denied. . . . It is fundamental that in determining the sufficiency of a complaint challenged by a defendant's motion to strike, all well-pleaded facts and those facts necessarily implied from the allegations are taken as admitted." (Citation omitted; internal quotation marks omitted.) *Doe* v. *Board of Education*, 76 Conn. App. 296, 299–300, 819 A.2d 289 (2003).

The plaintiff claims that the court improperly struck the counts of his complaint that pertained to the conduct of Thomas and Brown.[4] As to both Brown and Thomas, the plaintiff argues that the court improperly concluded that they did not owe a duty of care to the plaintiff. The plaintiff further argues that Brown was liable for the actions of Thomas Janesky under a theory of vicarious liability and that Brown was liable under a theory of negligence per se. We are not persuaded by any of the plaintiff's arguments.

I

We first address the plaintiff's argument as to the appropriate duty of care. Specifically, as to Brown, the

[4] In his appellate brief, Brown argues that the plaintiff waived his right to challenge the court's granting of his motion to strike because the plaintiff failed to "materially change or supplement the negligence allegations in his fourth amended complaint from the allegations contained in his previously stricken amended complaint . . . ." See *Parsons* v. *United Technologies Corp.*, 243 Conn. 66, 74, 700 A.2d 655 (1997). Because "[t]he interpretation of pleadings is always a question of law for the court . . . interpretation of the pleadings therefore is plenary." (Internal quotation marks omitted.) *Boone* v. *William W. Backus Hospital*, 272 Conn. 551, 573 n.12, 864 A.2d 1 (2005). Our review of the pleadings reveals that the plaintiff's fourth amended complaint contains sufficient further allegations such that he has not waived his right to challenge the court's granting of the defendants' motions to strike.

plaintiff maintains that Brown owed a duty of care to the plaintiff to refrain from instructing unqualified individuals to perform plumbing work that could start a fire. As to Thomas, the plaintiff argues that she owed him a duty of care both to report the fire promptly once it began and to refrain from hiring unqualified and untrained individuals to perform repairs in her home. "The existence of a duty of care is a prerequisite to a finding of negligence." *Gomes* v. *Commercial Union Ins. Co.*, 258 Conn. 603, 614, 783 A.2d 462 (2001). "The existence of a duty is a question of law and only if such a duty is found to exist does the trier of fact then determine whether the defendant [breached] that duty in the particular situation at hand." (Internal quotation marks omitted.) *Mendillo* v. *Board of Education*, 246 Conn. 456, 483, 717 A.2d 1177 (1998). "If a court determines, as a matter of law, that a defendant owes no duty to a plaintiff, the plaintiff cannot recover in negligence from the defendant." *RK Constructors, Inc.* v. *Fusco Corp.*, 231 Conn. 381, 384–85, 650 A.2d 153 (1994).

Our Supreme Court has stated that "the test for the existence of a legal duty of care entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 572, 717 A.2d 215 (1998).

"Our first step in an analysis of whether a duty exists and the extent of the defendant[s'] duty . . . is to determine the foreseeability of the plaintiff[s'] injury . . . ." (Internal quotation marks omitted.) Id. It is a well established tenet of our tort jurisprudence, however, that

"[d]ue care does not require that one guard against eventualities which at best are too remote to be reasonably foreseeable. See *Palsgraf* v. *Long Island R. Co.*, 248 N.Y. 339, 345, 162 N.E. 99 [1928] . . . . [A] defendant [is] not required to take precautions against hazards [that are] too remote to be reasonably foreseeable. . . . Due care is always predicated on the existing circumstances." (Citations omitted; internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 575.

We conclude that the plaintiff's injuries were not a reasonably foreseeable consequence of the actions of either Brown or Thomas. Our Supreme Court's decision in *Lodge* is helpful to our resolution of the plaintiff's claim. In *Lodge*, the plaintiffs were firefighters who were injured and the estates of firefighters who were killed in a collision that occurred while the firefighters were responding to a false alarm transmitted by the defendant companies. Id., 567–70. The collision directly was caused by a brake failure in the fire engine while the firefighters were en route to the location of the false alarm. Id. The court observed that "[i]t is impractical, if not impossible, to separate the question of duty from an analysis of the cause of the harm when the duty is asserted against one who is not the direct cause of the harm." Id., 574. It then concluded that "[n]otwithstanding the retrospective foreseeability of the possibility of the engine's brake failure . . . the harm suffered by the plaintiffs qualifies under the category of an unforeseeable consequence. Liability may not be imposed merely because it might have been foreseeable that some accident could have occurred; rather, liability attaches only for reasonably foreseeable consequences. . . . In every case in which a defendant's negligent conduct may be remotely related to a plaintiff's harm, the courts must draw a line, beyond which the law will not impose legal liability. Although that line is often

amorphous and difficult to discern, we conclude that it has been crossed in this case." (Citations omitted.) Id., 577–78.

Our Supreme Court likewise reached its conclusion in *Lodge* on the basis of public policy concerns favoring limited liability under such circumstances. "The potential benefit achieved from the imposition of liability in this case is limited to providing recovery for the plaintiffs from one other than the principal tortfeasor. The plaintiffs have already been compensated for their injuries by the city, as their employer, for injuries sustained in the course of their employment. The fact that the plaintiffs' recovery against the defendants would exceed that which would be available as workers' compensation benefits cannot justify the imposition of liability for an accident that was not a reasonably foreseeable consequence of the defendants' negligent conduct. We have concluded that the public [rather than individual defendants] should compensate its safety officers both in pay that reflects the hazard of their work and in workers' compensation benefits for injuries suffered when the risks inherent in the occupation materialize. . . . Because firefighters knowingly engage in a dangerous occupation, we have concluded that they are owed only the limited duty owed to licensees by landowners upon whose property they sustain injury in the course of performing their duty.[5] . . . The

---

[5] In *Furstein* v. *Hill*, 218 Conn. 610, 615–16, 590 A.2d 939 (1991), our Supreme Court analyzed the firefighter rule, which gives a firefighter the status of a licensee in a personal injury action against a landowner for harm sustained during the course of duty. The firefighter rule is not directly applicable in this case because it does not involve an issue of premises liability. See *Levandoski* v. *Cone*, 267 Conn. 651, 661, 841 A.2d 208 (2004) (declining to extend firefighter rule beyond scope of premises liability). Even though the rule likewise was not applicable in *Lodge*, that court nevertheless observed that "[i]ts rationale is . . . instructive for understanding the policy issues relevant to compensation of firefighters injured in the line of duty. We concluded that limited liability was appropriate in *Furstein* v. *Hill*, supra, 615, and *Roberts* v. *Rosenblatt*, 146 Conn. 110, 112–13, 148 A.2d 142 (1959), because (1) the nature of a firefighter's work is inherently hazardous

policies supporting the application of a narrow scope of duty owed by individual landowners to firefighters counsels us to conclude that it would be inappropriate to establish a broad scope of duty owed by these defendants to guard against unforeseen consequences. It would be irrational to conclude that firefighters are owed a greater duty by individual members of the public while they are en route to the scene of an emergency than when they arrive at the scene. The plaintiffs have been compensated for their risk by society as a whole by way of workers' compensation as well as other statutory benefits provided to injured firefighters. See General Statutes §§ 7-432 and 7-433b (providing disability and death benefits in addition to workers' compensation for firefighters injured in course of employment). To impose additional liability on the defendants under these circumstances would impose an undue burden on individual members of the public." (Citations omitted; internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 579–81.

Turning to the allegations as to Brown, like our Supreme Court in *Lodge*, we conclude that under the circumstances present in this case, the plaintiff's injury was not a reasonably foreseeable consequence of Brown's conduct. First, it was not alleged that the fire itself caused the injury, but, rather, it was the fire's advanced state that prompted the plaintiff to jump from the fire engine. A close reading of the fourth amended complaint reveals that the plaintiff jumped from the fire engine because the fire had reached an advanced state and that an "urgent situation" required the plaintiff and others to act with "greater haste" upon arriving at

and the choice of that occupation is akin to assumption of the risk, and (2) firefighters are adequately compensated for the job they perform and are able to recover workers' compensation for injuries sustained in the course of their employment. *Furstein* v. *Hill*, supra, 617–20. Both of these public policy considerations are equally relevant to the question [presented in this case.]" *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 580 n.12.

the scene. The advanced state of the fire, the plaintiff alleged, was caused by the failure of Thomas Janesky, Adam Janesky and Thomas to report it promptly. Therefore, implicit in the complaint is the understanding that if the fire had been reported promptly, the plaintiff would not have had to jump from the fire engine to respond but, rather, would have been able to employ a more measured response. Although it is alleged that Brown's conduct certainly is related to the plaintiff's harm, as his advice to Thomas Janesky sparked the chain of events that led to the injury, the intervening delay in reporting the fire sufficiently removes the injury from the realm of reasonably foreseeable consequences as to Brown. Second, even if the delay in reporting had not been an intervening circumstance, Brown did not ignite the fire. He merely directed other, albeit, unqualified individuals to perform the plumbing work that ignited the fire. That fact alone significantly attenuates Brown's conduct from the harm suffered. Last, the fact that the plaintiff sustained injuries after he jumped from the fire engine in an unorthodox and allegedly unsafe manner could not have been anticipated as a foreseeable consequence of Brown's conduct.

As to Thomas, the harm suffered likewise was not a reasonably foreseeable consequence of her hiring of unqualified individuals to perform repair work at her condominium. Simply put, if Brown's instruction to perform the plumbing work that caused the fire was too attenuated from the harm suffered to create a duty, Thomas' act of hiring those individuals is even further removed from the harm suffered. With respect to her delay in reporting the fire, we have found no authority stating that a homeowner owes a duty of care to emergency personnel to report promptly a fire or any other emergency. As a matter of public policy, we additionally note that a finding of liability in response to a delay in reporting an emergency could deter an individual from

reporting an emergency at all if that person thought that too much time had passed. As stated by the court, "[f]ear of a civil action should not deter a citizen from seeking aid in the event of a conflagration."

Additionally, for reasons of public policy, neither Brown nor Thomas owed a duty of care to the plaintiff under these circumstances. As observed in *Lodge*, because the law imposes only limited liability on a homeowner once a firefighter has entered an individual's property in response to an emergency, it would be illogical to conclude that firefighters are owed a greater duty by individual members of the public during the period of time in which they are responding to the emergency but before they have actually entered that property. See *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 580–81. On a more general level, our Supreme Court noted in the context of police officers that "[f]undamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement. . . . This fundamental concept rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence. Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection." (Internal quotation marks omitted.) *Kaminski* v. *Fairfield*, 216 Conn. 29, 38–39, 578 A.2d 1048 (1990). For all of the foregoing reasons, we conclude that the plaintiff's fourth amended complaint failed to allege a duty of care on the part of either Brown or Thomas.

In reaching this conclusion, we note that this court, as well as our Supreme Court, has reached similar results when presented with situations in which the harm suffered is attenuated significantly from the conduct of a third party tortfeasor. In *Gomes* v. *Commercial Union*

*Ins. Co.*, supra, 258 Conn. 603, our Supreme Court held that there was no duty on the part of a hotel desk clerk, who, after telling a hotel guest that she would report fire caused by arsonists at a neighboring gasoline station, failed to do so. The court concluded that "[t]he attenuation between the hotel defendants' conduct and the plaintiffs' harm is too remote, as a matter of public policy, to impose a duty." Id., 616–17; see also *RK Constructors, Inc.* v. *Fusco Corp.*, supra, 231 Conn. 388 (affirming trial court's striking of plaintiff's complaint as to defendant contractor when construction accident caused injury to plaintiff's employee, thereby raising plaintiff's workers' compensation premiums, because "the nexus between [the harm] and the plaintiff and its lost profits is simply too tenuous to impose liability for such collateral consequences"); *Demers* v. *Rosa,* 102 Conn. App. 497, 500–506, 925 A.2d 1165 (when plaintiff police officer fell and injured himself on icy driveway after having responded to call regarding roaming dog, harm that befell plaintiff not reasonably foreseeable as matter of law as to defendant dog owner), cert. denied, 284 Conn. 907, 931 A.2d 262 (2007).

II

We next address the plaintiff's claim that the court improperly struck the counts of the complaint pertaining to Brown because it failed to adopt the argument that Brown was liable for the actions of Thomas Janesky under a theory of vicarious liability. Specifically, the plaintiff maintains that Thomas Janesky performed the plumbing work as Brown's agent, thereby rendering Brown vicariously liable for the actions of Thomas Janesky in igniting the fire that caused the plaintiff's injury. We conclude that the plaintiff's fourth complaint fails to state a claim of agency between Thomas Janesky and Brown.

Our Supreme Court set forth the basic principles for determining the existence of an agency relationship in

*Wesley* v. *Schaller Subaru, Inc.,* 277 Conn. 526, 543, 893 A.2d 389 (2006). "Under § 1 of 1 Restatement (Second) of Agency (1958), [a]gency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . . Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking. . . . The existence of an agency relationship is a question of fact. . . . Some of the factors listed by the Second Restatement of Agency in assessing whether such a relationship exists include: whether the alleged principal has the right to direct and control the work of the agent; whether the agent is engaged in a distinct occupation; whether the principal or the agent supplies the instrumentalities, tools, and the place of work; and the method of paying the agent. . . . In addition, [a]n essential ingredient of agency is that the agent is doing something at the behest and for the benefit of the principal. . . . Finally, the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." (Internal quotation marks omitted.) Id., 543–44.

Although the plaintiff's complaint alleged that Thomas Janesky acted as Brown's agent, the complaint failed to allege the facts necessary to prove the existence of such a relationship. For example, there was no allegation that Brown had the right to control the work of Thomas Janesky. Rather, the fourth amended complaint alleged that Brown "instructed" Thomas Janesky that "the work was not that difficult for him to proceed with" and "directed him to carry out certain

plumbing and piping installation responsibilities in accordance with that instruction." A mere direction to perform a task does not imply control over the performance of that task. Likewise, the plaintiff's allegation that Brown "maintained control and responsibility for the plumbing and piping installation work" does not allege a right to control the work of Thomas Janesky.

Further, there were scant facts alleged that elaborate on the relationship between Thomas Janesky and Brown other than the use of the labels "agent" and "subcontractor." As stated, "the labels used by the parties in referring to their relationship are not determinative; rather, a court must look to the operative terms of their agreement or understanding." (Internal quotation marks omitted.) *Wesley* v. *Schaller Subaru, Inc.*, supra, 277 Conn. 543–44. The operative complaint as to Brown was the plaintiff's fourth amended complaint; the plaintiff availed himself of several opportunities to amend his pleadings. It is telling that throughout the course of those pleadings, the plaintiff did not take advantage of those opportunities to allege further facts delineating the alleged agency relationship between Brown and Thomas Janesky. Accordingly, we conclude, as a matter of law, that the plaintiff failed to allege an agency relationship between Brown and Thomas Janesky.

### III

The plaintiff finally claims that the court improperly struck the counts of the complaint pertaining to Brown because the court failed to find that the complaint alleged negligence per se. Specifically, the plaintiff asserts that Brown's instruction to Thomas Janesky to perform plumbing work was negligent per se because Brown knew that Thomas Janesky was unlicensed and that plumbing and piping installation work is a regulated trade requiring licensure pursuant to General Statutes § 20-330 et seq. We decline to review this claim.

As noted by the plaintiff in his brief, the court's April 3, 2007 memorandum of decision did not address the issue of negligence per se on the part of Brown. Because it is the duty of the appellant to provide this court with a record adequate for review, it was the plaintiff's responsibility to seek an articulation from the court as to this issue. "It is well established that [i]t is the appellant's burden to provide an adequate record for review. . . . It is, therefore, the responsibility of the appellant to move for an articulation or rectification of the record where the trial court has failed to state the basis of a decision . . . to clarify the legal basis of a ruling . . . or to ask the trial judge to rule on an overlooked matter. . . . In the absence of any such attempts, we decline to review this issue." (Internal quotation marks omitted.) *Ravetto* v. *Triton Thalassic Technologies, Inc.*, 285 Conn. 716, 743 n.11, 941 A.2d 309 (2008); see also Practice Book §§ 60-5 and 66-5. Because this court "may not surmise or speculate as to the reasons why the trial court granted the motion to strike"; (internal quotation marks omitted) *Conforti* v. *Christie*, 59 Conn. App. 280, 281, 756 A.2d 330, cert. denied, 254 Conn. 942, 761 A.2d 759 (2000); we decline to reach the issue of whether the court acted properly as to the plaintiff's claim of negligence per se.

The judgments are affirmed.

In this opinion the other judges concurred.