L AND V CONTRACTORS, LLC *v.* HERITAGE WARRANTY INSURANCE RISK RETENTION GROUP, INC., ET AL. (AC 33099)

Robinson, Espinosa and Bishop, Js.

Argued April 10—officially released July 10, 2012

Joseph C. Merschman, with whom was Erika L. Amarante, for the appellant (defendant AAMCO Transmissions, Inc.).

Michael T. Petela, Jr., with whom, on the brief, was Angelo Cicchiello, for the appellee (plaintiff).

*Opinion*

ROBINSON, J. The defendant[1] AAMCO Transmissions, Inc. (AAMCO), appeals from the judgment of the trial court finding AAMCO vicariously liable to the plaintiff, L & V Contractors, LLC, for the actions of Drive Train Unlimited, LLC (Drive Train). On appeal, AAMCO contends that the court erred in determining that (1) Drive Train was an agent of AAMCO and (2) Drive Train had apparent authority to act as AAMCO's

---

[1] The plaintiff brought this action against three defendants, Heritage Warranty Insurance Risk Retention Group, Inc., Drive Train Unlimited, LLC, and AAMCO Transmissions, Inc. AAMCO is the only defendant to appeal the trial court's decision.

agent.[2] We agree and, accordingly, reverse the judgment of the trial court.

The following facts, as found by the trial court, and procedural history are relevant to the resolution of AAMCO's claims. The plaintiff purchased a 2002 GMC Savannah van (vehicle) in February, 2003. The plaintiff, at that time, also bought an extended warranty for the vehicle through Heritage Warranty Insurance Risk Retention Group, Inc. (Heritage). In December, 2007, the transmission in the vehicle failed, and the plaintiff brought the vehicle to Crowley Chevrolet to be repaired. Heritage would not pay Crowley Chevrolet's rates, so it had the vehicle transported to Drive Train in East Hartford, which was owned at that time by Gary Gross and Michael Corrigan.[3] Heritage authorized Drive Train to examine the transmission; however, it refused to pay for the transmission to be repaired.

Alejandro Leone, a member of the plaintiff, received a letter from Gross, dated January 21, 2008, which stated: "You have failed to respond, as of this date, $25.00 per day storage applies. If we do not hear from you within 10 days, a mechanic['s] lien will be placed on your vehicle and it will be sold at auction." A few days later, Leone went to Drive Train to speak with Gross about the letter and to inform Gross that he was trying to work things out with Heritage.

Leone received another letter from Gross dated March 11, 2008. That letter stated: "To Whom it May Concern, Re: Abandoned GMC 2003 Savanna. . . . This

---

[2] AAMCO argues that there was no evidence to support the court's conclusion that Drive Train was an "actual agent" or an "apparent agent" of AAMCO. After reading AAMCO's brief, we construe its first argument to be that the court erred in determining that there was an agency relationship between it and Drive Train. We construe AAMCO's second argument as it is set forth in its brief, namely, that the court erred in concluding that Drive Train had apparent authority to bind AAMCO for its actions.

[3] Gross is no longer affiliated with Drive Train.

vehicle is being auctioned." Leone then authorized Drive Train to repair the vehicle's transmission. In June, 2008, after not hearing from Drive Train, Leone went to check on the progress of the transmission work and was informed by Gross that the vehicle had been sold.[4]

After the plaintiff left the vehicle with Drive Train, Gross added approximately nine hundred miles to the vehicle's mileage. In July, 2008, Gross drove the vehicle from East Hartford to Woodbridge on at least eight occasions to "loosen a knock in the engine." In response to a request for admission, Gross admitted that he used the vehicle for personal use.

The plaintiff filed an amended complaint in the present action on December 18, 2008,[5] asserting counts against Heritage,[6] Drive Train and AAMCO. The plaintiff alleged statutory theft under General Statutes § 52-564, conversion, violation of the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., fraudulent misrepresentation and negligent misrepresentation against Drive Train and AAMCO. The claims against AAMCO stemmed from the plaintiff's contention in its complaint that "[a]t all times mentioned herein, [Drive Train] was the agent, servant and/ or employee of [AAMCO] and was acting within the scope of its agency and/or employment with [AAMCO]." Drive Train filed a counterclaim against the plaintiff seeking the cost of breaking down the transmission for inspection, the cost of repairing the transmission and storage fees.

A one day trial was held on October 26, 2010. The court concluded that Drive Train was an agent of

---

[4] The vehicle, however, had not been sold and, as of the date of trial, still remained in Drive Train's possession.

[5] The plaintiff originally filed a complaint on October 8, 2008, against Drive Train and Heritage. The plaintiff sought leave from the court to cite AAMCO as an additional party defendant. The plaintiff's motion was granted on November 26, 2008, and, thereafter, the plaintiff filed the amended complaint.

[6] Before trial, the plaintiff settled its claim with Heritage.

AAMCO and that AAMCO was vicariously liable for Drive Train's actions. The court concluded that "Drive Train's torts occurred within the scope of AAMCO's employment of Drive Train and was done to further AAMCO's business." The court found that Drive Train had actual authority to act on AAMCO's behalf as "Drive Train's agreement with AAMCO was to pay 7 [percent] of revenue for advertising and other expenses and was authorized to use AAMCO's name. As a matter of fact, many of the exhibits from Drive Train have at the heading of the document the letterhead of AAMCO."

The court also determined that Drive Train had apparent authority to act for AAMCO. The court stated, "by permitting the use of AAMCO's name, AAMCO held Drive Train out as possessing sufficient authority to embrace the act of repairing transmissions and, therefore, had apparent authority. The plaintiff dealing with Drive Train must have and did have in good faith a reasonable belief that Drive Train had the necessary authority to bind AAMCO to Drive Train's actions. . . . It should be noted that plaintiff's exhibits [one] through [four] are letters from Drive Train written on AAMCO letterhead without identifying Drive Train anywhere on the document. Accordingly, to the plaintiff these were letters from AAMCO." The court further determined that because AAMCO advertises that it has a distributor in East Hartford, the general public "had a right to rely on the expertise and high reputation of AAMCO in deciding whether or not to have the transmission repaired at Drive Train." The court thereafter found in favor of the plaintiff as to each of its claims against Drive Train. AAMCO filed a motion to reargue, which was denied by the court. This appeal followed.

On appeal, AAMCO contends that the court erred in determining that Drive Train was its agent or had apparent authority to bind AAMCO for its actions. It is well settled that "[t]he nature and extent of an agent's

authority is a question of fact for the trier where the evidence is conflicting or where there are several reasonable inferences which can be drawn [therefrom]. . . . Accordingly, we review the court's findings with regard to agency and an agent's authority under the clearly erroneous standard." (Citations omitted; internal quotation marks omitted.) *LeBlanc* v. *New England Raceway, LLC*, 116 Conn. App. 267, 273–74, 976 A.2d 750 (2009).

"The burden of proving agency is on the party asserting its existence." *Lee* v. *Duncan*, 88 Conn. App. 319, 324, 870 A.2d 1, cert. denied, 274 Conn. 902, 876 A.2d 12 (2005). "Under § 1 of 1 Restatement (Second) of Agency (1958), [a]gency is defined as the fiduciary relationship which results from manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act . . . . Thus, the three elements required to show the existence of an agency relationship include: (1) a manifestation by the principal that the agent will act for him; (2) acceptance by the agent of the undertaking; and (3) an understanding between the parties that the principal will be in control of the undertaking." (Internal quotation marks omitted.) *Hollister* v. *Thomas*, 110 Conn. App. 692, 706, 955 A.2d 1212, cert. denied, 289 Conn. 956, 961 A.2d 419 (2008).

We begin with AAMCO's claim that the court erred in determining that Drive Train was its agent. AAMCO contends that the plaintiff failed to submit any evidence on the issue of AAMCO's control of Drive Train. Accordingly, AAMCO asserts that the plaintiff failed to prove that there was an agency relationship between Drive Train and AAMCO. We agree.

The plaintiff introduced no evidence that demonstrated that AAMCO controlled any part of the business of Drive Train. The only evidence presented that relates

to the relationship between AAMCO and Drive Train is that Drive Train and AAMCO have an agreement, whereby, in exchange for the use of AAMCO's name, Drive Train pays approximately 7 percent of its sales to AAMCO for advertisements. The mere fact that there was an agreement that allowed for Drive Train to use AAMCO's name is not evidence that it exercised any control over Drive Train's operations. See *McLaughlin* v. *Chicken Delight, Inc.*, 164 Conn. 317, 324, 321 A.2d 456 (1973) (principal evidence of agency was franchise agreement and court concluded that "[t]he plaintiff has totally failed to point to any portion of the contract or to any other evidence in the case which would sustain his burden of establishing that [the operator of the vehicle owned by the franchisee] was an agent of Chicken Delight"). A necessary element of demonstrating that there is a principal and agent relationship is to show that the principal is in control. See *Hollister* v. *Thomas*, supra, 110 Conn. App. 706. The plaintiff failed to provide *any* evidence that AAMCO controls Drive Train in any relevant manner.

The plaintiff asserts that AAMCO "failed to produce a purported representative to testify about the supposed franchise relationship. [The plaintiff also alleges that AAMCO] failed to produce any franchise agreement between [it] and Drive Train in discovery, and failed to introduce any evidence on this issue at trial."[7] The plaintiff fails to recognize, however, that the burden rests with the party seeking to prove that an agency relationship exists. See *Lee* v. *Duncan*, supra, 88 Conn. App. 324. AAMCO had no obligation to provide evidence relating to the relationship between it and Drive Train; rather, that burden rested solely on the plaintiff if it wanted to demonstrate that there was in fact a principal and agent relationship. The plaintiff failed to do so.

---

[7] The trial court made an explicit finding that Drive Train was not a franchisee of AAMCO; however, AAMCO did not appeal this finding.

We therefore conclude that because the there was no evidence presented by the plaintiff to provide a sufficient basis from which an inference of control could be derived, the court's finding of agency and the nature and scope of said agency was clearly erroneous. See *Botticello* v. *Stefanovicz*, 177 Conn. 22, 27, 411 A.2d 16 (1979).

We next determine whether the court erred in determining that Drive Train had apparent authority to act as AAMCO's agent. A party can be held liable to a third party if its actions caused a third party to believe that there was a principal and agent relationship between it and another. See *Beckenstein* v. *Potter & Carrier, Inc.*, 191 Conn. 120, 140, 464 A.2d 6 (1983) (despite no principal and agent relationship court still needed to determine if there was apparent authority). "Apparent authority is derived not from the acts of the agent but from the deliberate or inadvertent acts of the principal. . . . Apparent authority has two elements. First, it must appear from the acts of the principal that the principal held the agent out as possessing sufficient authority to embrace the act in question, or knowingly permitted him to act as having such authority . . . . Second, the party seeking to bind the principal must have acted in good faith reliance on that appearance of authority." (Internal quotation marks omitted.) *111 Whitney Avenue, Inc.* v. *Commissioner of Mental Retardation*, 70 Conn. App. 692, 703–704, 802 A.2d 117 (2002).

Connecticut, nevertheless, has yet to apply the doctrine of apparent authority to allow for a principal to be held liable to a third person who was harmed by the tortious conduct of a person held out as the principal's agent. In *Mullen* v. *Horton*, 46 Conn. App. 759, 771, 700 A.2d 1377 (1997), this court observed that other states have used the doctrine of apparent authority "to hold a principal, who represents that another is his servant

or agent and thereby causes a third person to rely justifiably on the care or skill of such agent, vicariously liable for harm caused to the third person by the lack of care or skill of his servant or agent." The court, however, noted that the doctrine had never been used in such a manner in Connecticut and, therefore, concluded that the doctrine of apparent authority was inapplicable to the case before it. Id., 772.

In *Davies* v. *General Tours, Inc.*, 63 Conn. App. 17, 31, 774 A.2d 1063 (2001), cert. granted on other grounds, 256 Conn. 926, 776 A.2d 1143 (2001) (appeal withdrawn October 18, 2001), this court again determined that the doctrine of apparent authority should not be used to hold a principal liable for the tortious conduct of a person held out as its agent. Citing *Mullen*, we determined that apparent authority "is not a viable ground on which to premise liability against a [principal] sued for the torts of an alleged agent." Id.

In the present case, the claims against AAMCO sound in tort and are based on the tortious conduct of Drive Train, which the plaintiff alleges AAMCO held out as its agent. Because this court has held that the doctrine of apparent authority cannot be used to hold a principal liable for the tortious actions of its alleged agent, we conclude that the trial court erred in determining that Drive Train had apparent authority to bind AAMCO.[8]

---

[8] The trial court concluded that Drive Train was AAMCO's agent and had actual authority to act on its behalf. "Actual authority exists when [an agent's] action [is] expressly authorized . . . or . . . although not authorized, [is] subsequently ratified by the [principal]." (Internal quotation marks omitted.) *Maharishi School of Vedic Sciences, Inc. (Connecticut)* v. *Connecticut Constitution Associates Ltd. Partnership*, 260 Conn. 598, 606–607, 799 A.2d 1027 (2002). "Authority is the power of the agent to affect the legal relations of the principal by acts done in accordance with the principal's manifestations of consent to him." 1 Restatement (Second), Agency § 7, p. 28 (1958). Because we conclude that the plaintiff failed to meet its burden to prove that there was a principal agent relationship between AAMCO and Drive Train, it necessarily follows that the plaintiff failed to carry its burden to prove that Drive Train had actual authority to act on AAMCO's behalf. We further note that even if the record did show evidence of agency or apparent

The judgment is reversed only as to the finding that AAMCO Transmissions, Inc., is vicariously liable to the plaintiff and the case is remanded with direction to render judgment in favor of AAMCO Transmissions, Inc. The judgment is affirmed in all other respects.

In this opinion the other judges concurred.

authority between Drive Train and AAMCO for the purposes of repairing automobiles, there was no evidence adduced at trial that the tortious conduct alleged in this matter fell within the purported relationship.