******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

ROBINSON, J., with whom PALMER and McDON-ALD, Js., join, concurring in the judgment. I agree with the majority's conclusion that the common-law firefighter's rule[1] does not bar the claims of ordinary negligence made by the plaintiff, Robert Sepega,[2] a municipal police officer, against the defendant, Lawrence R. DeLaura. Specifically, I agree with the majority that this case, which arises from injuries that the plaintiff sustained when he forcibly entered a home inside of which the defendant had barricaded himself while violating a protective order, is controlled by this court's decision in *Levandoski* v. *Cone*, 267 Conn. 651, 841 A.2d 208 (2004). I respectfully disagree, however, with the analytical approach taken in the majority's opinion insofar as it follows *Levandoski* and broadly holds that the firefighter's rule does not apply beyond the limited context of premises liability. As discussed in part I A of this concurring opinion, I believe that much of *Levandoski*, echoed by the majority in the present case, constitutes legally flawed dictum that undercuts the duty analyses in *Kaminski* v. *Fairfield*, 216 Conn. 29, 578 A.2d 1048 (1990), and *Lodge* v. *Arett Sales Corp.*, 246 Conn. 563, 717 A.2d 215 (1998), which are based substantially on the well established public policies that support the firefighter's rule, especially that of encouraging our citizens to call for professional help in emergencies without fear of civil liability. Beyond the majority's reliance on *Levandoski*, I suggest in part I B of this concurring opinion that the breadth of the majority's opinion carries with it numerous unintended and deleterious consequences insofar as it invites first responders to bring civil actions against victims of crime and motor vehicle accidents. Consistent with *Kaminski* and *Lodge*, I would instead adopt a "policy-based approach to the firefighter's rule [that] will encourage the public to ask for rescue while allowing professional rescuers to seek redress in limited but appropriate circumstances." *Baldonado* v. *El Paso Natural Gas Co.*, 143 N.M. 288, 293, 176 P.3d 277 (2008). To that end, as discussed in part II of this concurring opinion, I read *Levandoski* to stand only for the limited proposition that none of the public policies supporting the firefighter's rule precludes the imposition of a duty of care on suspected criminals who are fleeing or resisting a police officer. Accordingly, I concur only in reversing the judgment of the trial court.

I agree with the majority's statement of the relevant facts, procedural history, and standard of review. Turning to the applicable legal principles, it is well settled that a "cause of action in negligence is comprised of four elements: duty; breach of that duty; causation; and actual injury." (Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, 319 Conn. 641,

649, 126 A.3d 569 (2015). The application of the firefighter's rule concerns the duty element of the negligence cause of action. See, e.g., *Levandoski* v. *Cone*, supra, 267 Conn. 658–59; *Roberts* v. *Rosenblatt*, 146 Conn. 110, 112–13, 148 A.2d 142 (1959).

"Whether a duty exists is a question of law for the court, and only if the court finds that such a duty exists does the trier of fact consider whether that duty was breached. . . .

"Duty is a legal conclusion about relationships between individuals, made after the fact, and imperative to a negligence cause of action. The nature of the duty, and the specific persons to whom it is owed, are determined by the circumstances surrounding the conduct of the individual. . . . Although it has been said that no universal test for [duty] ever has been formulated . . . our threshold inquiry has always been whether the specific harm alleged by the plaintiff was foreseeable to the defendant. The ultimate test of the existence of the duty to use care is found in the foreseeability that harm may result if it is not exercised. . . . By that is not meant that one charged with negligence must be found actually to have foreseen the probability of harm or that the particular injury [that] resulted was foreseeable . . . . [T]he test for the existence of a legal duty entails (1) a determination of whether an ordinary person in the defendant's position, knowing what the defendant knew or should have known, would anticipate that harm of the general nature of that suffered was likely to result, and (2) a determination, on the basis of a public policy analysis, of whether the defendant's responsibility for its negligent conduct should extend to the particular consequences or particular plaintiff in the case." (Internal quotation marks omitted.) *Lawrence* v. *O & G Industries, Inc.*, supra, 319 Conn. 649–50.

With respect to the public policy aspect of the duty analysis, it is well established that: "Many harms are quite literally foreseeable, yet for pragmatic reasons, no recovery is allowed. . . . A further inquiry must be made, for we recognize that duty is not sacrosanct in itself . . . but is only an expression of the sum total of those considerations of policy [that] lead the law to say that the plaintiff is entitled to protection. . . . The final step in the duty inquiry, then, is to make a determination of the fundamental policy of the law, as to whether the defendant's responsibility should extend to such results. . . . [I]n considering whether public policy suggests the imposition of a duty, we . . . consider the following four factors: (1) the normal expectations of the participants in the activity under review; (2) the public policy of encouraging participation in the activity, while weighing the safety of the participants; (3) the avoidance of increased litigation; and (4) the decisions of other jurisdictions. . . . [This] totality of the circumstances rule . . . is most consistent with the

public policy goals of our legal system, as well as the general tenor of our [tort] jurisprudence." (Internal quotation marks omitted.) Id., 650–51.

## I

Like the majority, I begin my analysis with a review of this court's decision in *Levandoski*. I conclude that: (1) much of *Levandoski* is based on flawed reasoning, errors that the majority compounds by extending that decision in a way that is inconsistent with the significant public policy of encouraging Connecticut's citizens to seek professional help in emergencies; and (2) it was not necessary for the court in *Levandoski* to reach that broader conclusion because the facts of that case, like those of the present case, did not implicate the fundamental public policies underlying the firefighter's rule insofar as those facts did not involve a civil action against a citizen who requested or is receiving aid from first responders.

## A

I begin with the broader firefighter's rule analysis in *Levandoski*, in which this court held that the firefighter's rule did not bar the claim of the plaintiff, a police officer, who was injured while chasing the defendant, whom he suspected of possessing marijuana while attending a house party that the officer had been called to break up. *Levandoski* v. *Cone*, supra, 267 Conn. 654–56. In its analysis, the court considered the firefighter's rule as described in *Furstein* v. *Hill*, 218 Conn. 610, 615–16, 590 A.2d 939 (1991), which extended the doctrine to police officers. *Levandoski* v. *Cone*, supra, 659. Observing that the firefighter's rule was rooted in premises liability principles under § 345 (1) of the Restatement (Second) of Torts, the court stated that it "provides, in general terms, that a firefighter or police officer who enters private property in the exercise of his duties occupies the status of a licensee and, therefore, is owed a duty of care by the property owner that is less than that owed to an ordinary invitee. . . . Thus, under the firefighter's rule, the landowner generally owes the firefighter or police officer injured on his property 'only the duty not to injure him wilfully or wantonly . . . .' "[3] (Citation omitted.) *Levandoski* v. *Cone*, supra, 653–54, 658–59. The court determined in *Levandoski* that the three major policy considerations—namely, premises liability considerations, assumption of risk, and avoiding the double taxation of landowners given the availability of workers' compensation benefits—that supported the extension of the firefighter's rule to police officers in *Furstein*, nevertheless did not support the rule's expansion "beyond the scope of premises liability so as to bar a police officer from recovering, based on a claim of ordinary negligence, from a tortfeasor who is neither an owner nor a person in control of the premises." Id., 654; see also id., 661–64. I believe that the court's overbroad conclu-

sion in *Levandoski* that the firefighter's rule should not extend beyond premises liability cases rested on legally and factually incorrect premises.

I start with the assumption of risk doctrine. In *Levandoski*, this court stated that, "to the extent that the firefighter's rule rests on the doctrine of assumption of risk, it would be inconsistent with the policy of our general tort law to extend the rule beyond its present confines. That policy is expressed in General Statutes § 52-572h, pursuant to which the legislature has abolished the doctrine of assumption of risk in negligence actions." (Footnote omitted.) Id., 662–63. I disagree with *Levandoski*'s conclusion, echoed by the majority in the present case, that the statutory abolition of assumption of risk precludes expansion of the firefighter's rule beyond premises liability cases. Rather, I agree with the multitude of other courts that have concluded that the abolition of the assumption of risk doctrine does not by itself furnish a basis for the abolition or restriction of the firefighter's rule, given the substantial public policies that continue to support the firefighter's rule. See, e.g., *Winn* v. *Frasher*, 116 Idaho 500, 503–504, 777 P.2d 722 (1989); *Babes Showclub, Jaba, Inc.* v. *Lair*, 918 N.E.2d 308, 313 (Ind. 2009); *Apodaca* v. *Willmore*, 306 Kan. 103, 110–12, 392 P.3d 529 (2017); *Farmer* v. *B & G Food Enterprises, Inc.*, 818 So. 2d 1154, 1157 (Miss. 2002); *England* v. *Tasker*, 129 N.H. 467, 470–71, 529 A.2d 938 (1987); *Carson* v. *Headrick*, 900 S.W.2d 685, 689–90 (Tenn. 1995); *Fordham* v. *Oldroyd*, 171 P.3d 411, 414–16 (Utah 2007); *Pinter* v. *American Family Mutual Ins. Co.*, 236 Wis. 2d 137, 152–53, 613 N.W.2d 110 (2000); see also *Kreski* v. *Modern Wholesale Electric Supply Co.*, 429 Mich. 347, 365, 415 N.W.2d 178 (1987) ("While we find that primary assumption of a risk is still viable in Michigan, we decline to adopt the fireman's rule on the basis of the doctrine. However, we do not do so for the reason argued by plaintiff—the lack of direct employment relationship between taxpayers and fire fighters. The public policy rationales advanced in favor of the rule are more than sufficient to support it."), superseded by statute as stated in *Lego* v. *Liss*, 498 Mich. 559, 563, 874 N.W.2d 684 (2016); but see *Christensen* v. *Murphy*, 296 Or. 610, 619–21, 678 P.2d 1210 (1984) (relying largely on statutory abolition of doctrine of assumption of risk, and abandoning common-law firefighter's doctrine in Oregon, noting that "so-called policy reasons [in support of firefighter's rule] are merely redraped arguments drawn from premises liability or implied assumption of risk, neither of which are now available as legal foundations in this state").

I next address the court's determination in *Levandoski* that the "distinction upon which [the firefighter's rule] rests, namely, whether the plaintiff is an invitee or licensee, is itself a distinction that exists in our law only with regard to claims based upon premises liability,

and the differing duties of care that emanate from those distinctions are cast in terms of a landowner's duty to persons on his or her land."[4] *Levandoski* v. *Cone*, supra, 267 Conn. 661–62. The court stated that "[t]his essential link to a landowner's liability . . . is the most compelling argument for the rule, because of the reasonable expectations of landowners, and because of the ensuing hardship that would be visited upon a landowner in the absence of the rule."[5] Id., 662. Specifically, the court observed that, "to the extent that the firefighter's rule rests on the avoidance of double taxation of the landowner and the presence of workers' compensation benefits for the injured firefighter or police officer, the rationale does not apply to the present case. The defendant is not a taxpayer, as is a landowner who pays taxes on his or her property. Of course, although in any given case a negligent tortfeasor who injures a firefighter or police officer may also pay taxes to the local municipality, that fact would be wholly fortuitous. The point of the rule, however, is that the landowner who owes a lesser degree of duty to the police officer who enters his or her land has that benefit because, as a landowner, he or she also indirectly pays the salary of the officer through property taxes." Id., 663.

In my view, *Levandoski*'s reliance on the defendant's status as a property taxpayer, echoed by the majority in the present case, is a distinction without a difference that manages to raise the unappealing specter of economic classism by, in effect, bestowing tort immunity only on landowners.[6] More fundamentally, *Levandoski* ignores the fact that renters of property also contribute to the property tax coffers of the municipalities in which they live, both directly through personal property tax payments on vehicles and indirectly through rental payments to their landlords. *Levandoski* also ignores the fact that not all first responders are solely compensated through property tax revenues.[7] Even putting aside those first responders who are employed by the state of Connecticut, such as state troopers, income, sales, and other tax receipts flow to municipalities though various state aid payments to municipalities. See, e.g., General Statutes § 12-19a (providing grants to municipalities in lieu of property tax for state-owned property). Unlike the majority, which perpetuates these flawed distinctions in its firefighter's rule analysis, I agree with those jurisdictions who understand that the entire community pays indirectly for the services of first responders,[8] shares in the benefits of their services, and spreads the cost of their injuries.[9] See, e.g., *Moody* v. *Delta Western, Inc.*, 38 P.3d 1139, 1142–43 (Alaska 2002); *Farmer* v. *B & G Food Enterprises, Inc.*, supra, 818 So. 2d 1159; *Baldonado* v. *El Paso Natural Gas Co.*, supra, 143 N.M. 291; *Pinter* v. *American Family Mutual Ins. Co.*, supra, 236 Wis. 2d 154–55; accord *Flowers* v. *Rock Creek Terrace Ltd. Partnership*, 308 Md. 432, 446–47, 520 A.2d 361 (1987) (relying on public policy

in abandoning premises liability distinctions as basis for firefighter's rule).

Second, limiting the firefighter's rule to premises liability cases creates an absolutely illogical distinction in both theory and practice. My research has revealed only one other case, where, akin to the language in *Levandoski*, the Illinois Supreme Court, holding that the firefighter's rule did not preclude a products liability action against automobile dealer and manufacturer, also specifically "reject[ed] the opportunity to extend the 'fireman's rule' beyond its limited context of landowner/occupier liability." *Court* v. *Grzelinski*, 72 Ill. 2d 141, 150–51, 379 N.E.2d 281 (1978); see also *Knight* v. *Schneider National Carriers, Inc.*, 350 F. Supp. 2d 775, 782–83 (N.D. Ill. 2004) (reviewing Illinois case law subsequent to *Grzelinski* confirming application of firefighter's rule is limited to premises liability cases). Like the Michigan Supreme Court; see *Kreski* v. *Modern Wholesale Electric Supply Co.*, supra, 429 Mich. 376 n.19; I find Justice Ryan's dissenting opinion in *Grzelinski* far more persuasive, as it points out the "extremely illogical" result of limiting the firefighter's rule to premises liability cases, which "would not permit a fireman to recover for injuries he receives in extinguishing a fire in my automobile which I caused by negligently pouring gasoline on the hot manifold if the automobile is parked in my driveway, but [would permit recovery] if my automobile is parked in the street." *Court* v. *Grzelinski*, supra, 152.

An even more glaring error in *Levandoski*, which is amplified by the majority in the present case, was the short shrift given to *Kaminski* v. *Fairfield*, supra, 216 Conn. 29, which "held that homeowners, who had summoned mental health workers to their home to evaluate their mentally ill son, had no duty to warn a police officer, who accompanied the mental health workers, of the son's dangerous and violent propensities."[10] *Levandoski* v. *Cone*, supra, 267 Conn. 664; see *Kaminski* v. *Fairfield*, supra, 36–39. In my view, *Kaminski* is significant because it is our seminal recognition, as a matter of public policy, of the benefits of encouraging our state's citizens to seek assistance from our communities' first responders, rather than stoking a fear of liability that would create incentives for delayed calls, self-help, or both. In concluding that the parents had no duty to warn, the court emphasized in *Kaminski* that there were "two significant uncontroverted facts: (1) the plaintiffs disclosed [their son's] excitable condition to the crisis team when they asked for its intervention; and (2) the defendant, an armed police officer, *came to the plaintiffs' home in the course of his professional responsibilities to assist in dealing with the crisis to which the team had been alerted.*" (Emphasis added.) *Kaminski* v. *Fairfield*, supra, 37.

Turning to the second consideration, the court cited

the firefighter's rule case law and emphasized that the parents "cannot be held liable to the defendant for risks that inhered in his presence, as a police officer acting as a trained escort for a mental health team on a visit to a disturbed patient known to be agitated and to have access to axes. '[*F*]*undamental concepts of justice prohibit a police officer from complaining of negligence in the creation of the very occasion for his engagement.* . . . This fundamental concept rests on the assumption that governmental entities employ firefighters and police officers, at least in part, to deal with the hazards that may result from their taxpayers' own future acts of negligence. Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection.' *Berko* v. *Freda*, 93 N.J. 81, 87, 459 A.2d 663 (1983) (a police officer injured in the pursuit of a stolen car cannot sue the car owner for negligence in leaving the car with keys in the ignition)." (Emphasis added; footnote omitted.) *Kaminski* v. *Fairfield*, supra, 216 Conn. 38–39. The court observed that, in "accordance with this principle, a police officer has been precluded from suing parents for negligence when he was assaulted by intoxicated guests at a party after having been summoned to quell the disturbance. *Walters* v. *Sloan*, 20 Cal. 3d 199, 202–205, 571 P.2d 609, 142 Cal. Rptr. 152 (1977). Similarly, a police officer struck by another car while assisting a truck driver to gather fallen cargo was not allowed to sue the truck driver for having negligently secured his freight. *Steelman* v. *Lind*, 97 Nev. 425, 427–28, 634 P.2d 666 (1981) . . . ." (Citations omitted.) *Kaminski* v. *Fairfield*, supra, 39. Relying on these public policy considerations, all of which are germane to the firefighter's rule, the court held that the parents owed no duty to the police officer. Id.

Looking beyond *Kaminski*, public policy aspects of the duty analysis in *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 563, also recognize the importance of timely calls for emergency aid and, thus, support the extension of the firefighter's rule beyond premises liability cases. In *Lodge*, this court held that a fire alarm monitoring service, which had negligently transmitted a false alarm, did not owe a duty to firefighters injured or killed in an accident caused by the failure of the brakes on the fire engine that they were using to respond to that false alarm. Id., 567–71, 585. Beyond concluding that the harm caused by the fire engine's brake failure, as opposed to an ordinary traffic accident, was not reasonably foreseeable; id., 577–78; the court also emphasized that "liability should not attach because of those policy considerations relating to the underlying purposes of tort recovery." Id., 578. After citing the firefighter's rule cases,[11] the court emphasized that, "[i]f one who initiates a false alarm may be liable for those consequences that are not reasonably foreseeable, but, rather, are significantly attenuated from the original negligent con-

duct, that liability will impose an unreasonable burden on the public. *The costs stemming from this undue burden may include a substantial chilling of the willingness to report an emergency prior to investigating further to determine whether it is legitimate. Such delay may cost precious time, possibly leading to the unnecessary loss of life and property.* It also may reduce the willingness of property owners to install alarms for fear of liability. Furthermore, imposing liability for such remote consequences undoubtedly will increase the cost of installing and monitoring alarms. Although those social costs may not be sufficient to prompt us to conclude that public policy dictates that there should be no duty in a case where the harm and the negligence are less attenuated or where the benefits of imposing liability are more substantial, under the circumstances of this case, we find them compelling." (Emphasis added.) Id., 584–85; but see id., 585–86 (emphasizing that alarm companies can be held liable for harms that "are reasonably foreseeable and within the scope of the risk created by their negligent conduct," and that brake failure on responding fire truck was not foreseeable risk).

Indeed, even after *Levandoski*, our Appellate Court has followed *Lodge* and *Kaminski* in recognizing, as a policy matter, that it is undesirable to allow first responders to bring negligence actions against citizens who have called for their help. In addition to recognizing their compensation via workers' compensation and other statutory benefits, these decisions observe that it is bad public policy to create a specter of liability that chills the reporting of emergencies. See *Hollister* v. *Thomas*, 110 Conn. App. 692, 703–704, 955 A.2d 1212 (concluding that homeowner owed no duty to firefighter, injured when jumping from fire truck, to have reported fire more promptly), cert. denied, 289 Conn. 956, 961 A.2d 419 (2008); *Demers* v. *Rosa*, 102 Conn. App. 497, 505–506 n.6, 925 A.2d 1165 (stating that policy considerations disfavor allowing police officer, injured in fall after recovering roaming dog, to bring negligence lawsuit against dog's owner, as existing statutory penalties provide "substantial incentive for dog owners to take appropriate precautions"), cert. denied, 284 Conn. 907, 931 A.2d 262 (2007). Put differently, "[f]ear of a civil action should not deter a citizen from seeking aid in the event of a conflagration." (Internal quotation marks omitted.) *Hollister* v. *Thomas*, supra, 704.

The majority, however, relies on Dean William L. Prosser's criticism of this policy justification as "preposterous rubbish," and contends that the absence of a firefighter's rule will not deter citizens from calling for emergency aid. W. Prosser, Law of Torts (4th Ed. 1971) § 61, p. 397. The majority, however, cites no legal authority or empirical evidence tending to support Prosser's view. My research demonstrates that, although one court has agreed with Prosser;[12] see *Christensen*

v. *Murphy*, supra, 296 Or. 620; the overwhelming majority of other courts continue to hold that encouraging citizens to call for help without fear of liability, even for emergencies of their own creation, remains a paramount public policy. See, e.g., *Neighbarger* v. *Irwin Industries, Inc.*, 8 Cal. 4th 532, 544, 882 P.2d 347, 34 Cal. Rptr. 2d 630 (1994); *Melton* v. *Crane Rental Co.*, 742 A.2d 875, 876 n.5 (D.C. 1999); *Lanza* v. *Polanin*, 581 So. 2d 130, 132 (Fla. 1991); *Kapherr* v. *MFG Chemical, Inc.*, 277 Ga. App. 112, 114–15, 625 S.E.2d 513 (2005); *Babes Showclub, Jaba, Inc.* v. *Lair*, supra, 918 N.E.2d 314; *Pottebaum* v. *Hinds*, 347 N.W.2d 642, 645 (Iowa 1984); *Steelman* v. *Lind*, supra, 97 Nev. 428; *England* v. *Tasker*, supra, 129 N.H. 471; *Berko* v. *Freda*, supra, 93 N.J. 88–89; *Baldonado* v. *El Paso Natural Gas Co.*, supra, 143 N.M. 291; *Day* v. *Caslowitz*, 713 A.2d 758, 761 (R.I. 1998); *Carson* v. *Headrick*, supra, 900 S.W.2d 690; *Fordham* v. *Oldroyd*, supra, 171 P.3d 413–14.

As one scholarly commentator, Professor Robert H. Heidt, observes in disagreeing with Prosser, "once a fire has started at a business . . . it is not preposterous to think that fear of liability to the firefighters may lead the business to delay calling the professionals in the hope that its employees—the preferred firefighters—can deal with the fire. Abolishing the fireman's rule, therefore, sends a potential defendant who discovers a peril the message: 'First, see if your employees can handle it.' "[13] R. Heidt, "When Plaintiffs Are Premium Planners for Their Injuries: A Fresh Look at the Fireman's Rule," 82 Ind. L.J. 745, 784 (2007). I agree with his observation that, "[w]hile this message may serve the interests of potential defendants, it offends the interest of society. Defendants and their employees may overestimate their relative competence to deal with the peril compared to the professionals."[14] Id.

Moreover, "government entities employ and train firefighters and policemen, at least in part, to deal with those hazards that may result from the actions or inaction of an uncircumspect citizenry, it offends public policy to say that a citizen invites private liability merely because he happens to create a need for those public services. . . . Citizens should be encouraged and not in any way discouraged from relying on those public employees who have been specially trained and paid to deal with these hazards. Additionally, a citizen does not have the right to exclude public safety officers from emergency situations or to control their actions once they have been alerted to an emergency and arrive on the scene. Indeed, a citizen may have a legal duty to summon a public safety officer in some instances and [saying that] he may, in the course of discharging that duty, risk tort liability to officers who are specially trained and hired to cope with these hazards, [would be] inconsistent and unfair." (Citation omitted.) *Pottebaum* v. *Hinds*, supra, 347 N.W.2d 645; see also *Babes Showclub, Jaba, Inc.* v. *Lair*, supra, 918 N.E.2d 314

("Thus, the automobile driver who negligently causes an accident can call paramedics without fear that they will sue him for causing the accident, but he must behave reasonably once they arrive. Similarly, bar owners may call the police to assist in dealing with an unruly customer, but may not add to the danger faced by the responding officer without exposing themselves to liability."); *Steelman* v. *Lind*, supra, 97 Nev. 428 (stating that, without firefighter's rule, "citizens would be reluctant to seek the aid of a public safety officer or to have such aid sought in their behalf upon the fear that a subsequent claim for injury by the officer might be far more damaging than the initial fire or assault").

I, therefore, agree with the Utah Supreme Court's characterization of Prosser's view as mere "rhetoric," along with its "prefer[ence] to inhabit a society in which the consequences of one's inattention do not include the compensation of those on whom all of us collectively confer the duty to extricate us from our distress. We are confident that most citizens, including those who are conversant with comparative negligence law, believe that they now inhabit such a society. While judges do not perform their judicial responsibilities by enshrining widely held assumptions into the common law, the widely held belief that one is not exposed to tort liability for negligence requiring rescue emanates from a broadly shared value about the workings of a well-ordered society." *Fordham* v. *Oldroyd*, supra, 171 P.3d 413–14. Put differently, in the absence of contrary public policy direction from our legislature, I do not countenance an approach to the common law that has the effect of encouraging the citizens of Connecticut to undertake self-help in emergency situations, rather than calling 911 immediately.[15]

### B

Beyond what I believe is the majority's misunderstanding of *Levandoski*, I suggest that the breadth of the majority's opinion, which renders the firefighter's rule completely dead letter with respect to ordinary negligence claims, carries with it numerous unintended consequences. Specifically, I believe that the majority's wholesale rejection of the firefighter's rule and its supporting public policies in nonpremises liability cases carries the consequence of inviting first responders to bring civil actions against victims of crime and motor vehicle accidents. In addition to its inconsistency with *Kaminski* v. *Fairfield*, supra, 216 Conn. 37, and *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 584–85, which remain good law notwithstanding the overbreadth of *Levandoski*, the majority's conclusion ignores the advantages attendant to modern formulations of the public policy-based firefighter's rule, which "encourage[s] the public to ask for rescue while allowing professional rescuers to seek redress in limited but appropriate circumstances." *Baldonado* v. *El Paso Nat-*

*ural Gas Co.*, supra, 143 N.M. 293.

To begin, the mischief of the majority's outright rejection of the firefighter's rule beyond premises liability cases is illustrated by the kinds of cases that would get their ill-deserved day in court, including:[16] (1) an action against a domestic violence victim, claiming that, although she had told an emergency dispatcher that her husband was occasionally violent and had guns in the home, she had negligently failed to warn police of certain specific threats, after which two police officers were shot while escorting her home;[17] (2) an action against parents after their teenage daughter hosted a wild house party resulting in an injury to a police officer in the course of arresting a party attendee for public drunkenness;[18] (3) an action against the owner of a stolen vehicle, claiming that the keys had been negligently left inside of the ignition, after the resulting chase injured a police officer;[19] (4) an action against a residential care facility who summoned police for assistance with an agitated and incoherent resident;[20] (5) an action against a restaurant or tavern owner who summoned police for assistance in dealing with a disturbance;[21] (6) an action against the driver of a car involved in an accident by an emergency medical technician, who sustained a hernia while extricating a passenger from a vehicle;[22] and (7) an action against the driver of a car involved in an accident, after a police officer that had been assisting him was struck and injured by another car.[23]

I cite these cases only for illustration, as it may well be that the facts of particular cases militate in favor of recognizing a duty of care, even on the part of someone receiving help. Indeed, I emphasize that the flexible nature of the public policy-based firefighter's rule allows us to leave the courthouse doors open to first responders injured in the line of duty under circumstances that do not implicate penalizing citizens who have called for emergency help, such as the present case. Indeed, other courts have allowed actions against independent tortfeasors who injure first responders acting in the line of duty. See, e.g., *Melton* v. *Crane Rental Co.*, supra, 742 A.2d 876–79 (doctrine did not bar action by emergency medical technician when crane truck struck ambulance transporting patient to hospital); *McKernan* v. *General Motors Corp.*, 269 Kan. 131, 133, 140–41, 3 P.3d 1261 (2000) (doctrine did not bar products liability action against automobile manufacturer whose hood strut exploded, injuring firefighter working at car fire scene); *Aetna Casualty & Surety Co.* v. *Vierra*, 619 A.2d 436, 439–40 (R.I. 1993) (doctrine did not bar action by police officer against driver who struck him while he was directing traffic at accident scene, because that driver was "independent tortfeasor"). Similarly, subsequent negligence, including the duty not to mislead first responders about known hazards, has also been recognized as an exception to the

firefighter's rule. See, e.g., *Lipson* v. *Superior Court*, 31 Cal. 3d 362, 365, 373, 644 P.2d 822, 182 Cal. Rptr. 629 (1982) (firefighter's rule did not bar action by firefighters against chemical plant owner who negligently or intentionally told firefighters responding to boilover that there were no toxic chemicals involved).

Thus, I emphasize that I would join those jurisdictions that have retained the common-law firefighter's rule as a matter of public policy, notwithstanding underlying doctrinal changes such as the statutory abolition of assumption of risk or differing landowners' duties.[24] As the New Mexico Supreme Court has observed, given these shifts in the common law, "[m]ost modern decisions base the firefighter's rule on a public policy rationale."[25] *Baldonado* v. *El Paso Natural Gas Co.*, supra, 143 N.M. 291; see also *Moody* v. *Delta Western, Inc.*, supra, 38 P.3d 1142; *Apodaca* v. *Willmore*, supra, 306 Kan. 122; *Farmer* v. *B & G Food Enterprises, Inc.*, supra, 818 So. 2d 1159–60; *Ellinwood* v. *Cohen*, 87 A.3d 1054, 1058 n.5 (R.I. 2014); *Fordham* v. *Oldroyd*, supra, 171 P.3d 413–14. This allows for an "approach to the firefighter's rule [that] will encourage the public to ask for rescue while allowing professional rescuers to seek redress in limited but appropriate circumstances." *Baldonado* v. *El Paso Natural Gas Co.*, supra, 143 N.M. 293.

I agree, then, with the Rhode Island Supreme Court that the firefighter's rule "bar[s] an injured public-safety official from maintaining a negligence action against a tortfeasor whose alleged malfeasance is responsible for bringing the officer to the scene of a fire, crime, or other emergency where the officer is injured. . . . To be shielded from liability under the public-safety officer's rule, the defendant, or alleged tortfeasor, must establish three elements: (1) that the tortfeasor injured the [first responder] . . . in the course of [the first responder's] employment; (2) that the risk the tortfeasor created was the type of risk that one could reasonably anticipate would arise in the dangerous situation which [the first responder's] employment requires [him or her] to encounter; and (3) that the tortfeasor is the individual who created the dangerous situation which brought the [first responder] . . . to the . . . accident scene . . . ." (Citations omitted; internal quotation marks omitted.) *Ellinwood* v. *Cohen*, supra, 87 A.3d 1057–58.

With respect to the circumstances under which it is appropriate for our first responders to seek redress, I find instructive the Kansas Supreme Court's recent formulation of exceptions to the firefighter's rule, under which "law enforcement officers, like firefighters, who suffer injuries as a result of discharging their duties at the scene of negligently caused hazards or conditions their jobs require them to mitigate and eliminate cannot recover from the person or persons responsible for the existence of the hazards or conditions, unless one of

the three exceptions . . . applies. Under those exceptions, a law enforcement officer will not be barred from recovery [1] for negligence or intentional acts of misconduct by a third party, [2] if the individual responsible for the [officer's] presence engages in a subsequent act of negligence after the [officer] arrives at the scene,[26] or [3] if an individual fails to warn of known, hidden dangers on his premises or misrepresents the nature of the hazard where such misconduct causes the injury to the [officer]." (Footnote added; internal quotation marks omitted.) *Apodaca* v. *Willmore*, supra, 306 Kan. 122–23.

Legislative action, as in some of our sister states, would be ideal for making the appropriate findings and articulating the contours of Connecticut's firefighter's rule. See footnote 15 of this concurring opinion. Nevertheless, until such time as our legislature can act, I would adopt a formulation of the firefighter's rule as a matter of common law that encourages citizens to seek help in emergencies, while not slamming the courthouse door to appropriate claims of our first responders.

II

Although I respectfully disagree with its firefighter's rule analysis, I nevertheless agree with the majority's order reversing the judgment of the trial court on the ground that the firefighter's rule does not bar the plaintiff's claims. I reach this conclusion because the facts of the present case, as in *Levandoski*, do not implicate the public policy of encouraging calls for emergency assistance. I suggest that *Levandoski* may be more narrowly read to hold that the firefighter's rule does not preclude the imposition of a duty of care on persons fleeing or resisting police officers, which is not inconsistent with the public policy of encouraging Connecticut's citizens to summon emergency services when they are needed.

Specifically, Pennsylvania's intermediate appellate court has cited *Levandoski* in support of its conclusion that a person who fled from a police officer owed that officer, who was injured during the chase, a duty of care given factors such as: (1) "the utter dearth of social utility of . . . conduct in fleeing from an officer"; (2) "the obvious risk and foreseeability of possible injury to the pursuing officer"; (3) "the positive consequences of discouraging flight and encouraging apprehension of criminals"; and (4) "the public interest in empowering police to enforce the law and keep the communities safe . . . ." *Schemberg* v. *Smicherko*, 85 A.3d 1071, 1076 (Pa. Super. 2014); see also *Lanza* v. *Polanin*, supra, 581 So. 2d 132 (firefighter's rule did not bar action by police officer against passenger in vehicle involved in accident that occasioned officer's presence, when passenger injured officer in course of resisting arrest); *Trainor* v. *Santana*, 86 N.J. 403, 404–408, 432 A.2d 23 (1981)

(firefighter's rule did not bar action against defendant who injured police officer while trying to escape from arrest during traffic stop).

Indeed, in holding that the firefighter's rule, as a matter of public policy, barred a police officer injured after a high speed chase from bringing a civil claim against the owner of a stolen vehicle, claiming negligence for leaving the keys in the ignition, the New Jersey Supreme Court emphasized that "nothing in the 'fireman's rule' prevents [the police officer] from suing the thief." *Berko* v. *Freda*, supra, 93 N.J. 90. The New Jersey court aptly rejected the proposition that police officers who fight crime "must expect an occasional encounter with violence. Why then should they be permitted to sue a thief for personal injuries when they have assumed the risk that the thief might fight back? We resolve this paradox by observing that the public policy underlying the fireman's rule simply does not extend to intentional abuse directed specifically at a police officer. To permit this would be to countenance unlimited violence directed at the policeman in the course of most routine duties. Certainly the policeman and his employer should have some private recourse for injuries so blatantly and criminally inflicted. . . . No fundamental unfairness results from allowing an officer to sue a criminal. The crook does not summon the police for help. While the police are paid to risk being assaulted, they are not paid to submit to a criminal assault."[27] (Citation omitted; internal quotation marks omitted.) Id., 90.

To me, this is where the reach of *Levandoski* should end, namely, with a holding that the firefighter's rule does not preclude police officers from bringing civil actions against suspects or perpetrators who have endangered them through their conduct in fleeing from or resisting apprehension. Indeed, like the fleeing defendant in *Levandoski*, the defendant in the present case, by barricading himself in the house after violating a protective order, actively engaged in conduct that had the effect of endangering the plaintiff after his arrival at the scene. Put differently, the defendant was not the party who sought or received emergency aid; instead, his conduct was consistent with the plaintiff, a law enforcement officer, being the last person he wanted to see.[28] Given that the relatively high risks created by the defendant's conduct bring with them minimal social utility, it does not implicate any fundamental principle of justice to hold that he owed the plaintiff a duty of reasonable care. Accordingly, I agree with the majority that the trial court improperly granted the defendant's motion to strike in the present case.

I concur in the majority's judgment reversing the judgment of the trial court and remanding the case for further proceedings according to law.

[1] Given its applicability to other emergency professions such as police officers, the doctrine known in Connecticut as the firefighter's rule has been described in other jurisdictions using broader terms such as the "public

safety officer's rule" or the "professional rescuers doctrine." (Internal quotation marks omitted.) *Ellinwood* v. *Cohen*, 87 A.3d 1054, 1058 n.4 (R.I. 2014); see also, e.g., *Seibert Security Services, Inc.* v. *Superior Court*, 18 Cal. App. 4th 394, 404 n.3, 22 Cal. Rptr. 2d 514 (1993) (noting that doctrine was historically known as "fireman's rule," with modern case law embracing gender-neutral term "firefighter's rule"). I refer to police officers, firefighters, and emergency medical technicians, collectively, as first responders.

[2] I note that the town of Clinton is also a plaintiff in the present case. See footnote 1 of the majority opinion. For the sake of simplicity, I refer to Sepega as the plaintiff.

[3] As noted in *Levandoski* v. *Cone*, supra, 267 Conn. 658–59, Connecticut's seminal firefighter's rule case is *Roberts* v. *Rosenblatt*, supra, 146 Conn. 112–13, which held that a firefighter, as a licensee, could not recover from landowners based on the negligent maintenance of their property when he was injured while responding to an alarm.

[4] "Unlike the minority of other states that have abolished distinctions between licensees and invitees in favor of the general duty of reasonable care that the plaintiff favors, we continue to adhere to the proposition that the defendant's duty is based on the entry status of the particular person in question." *Morin* v. *Bell Court Condominium Assn., Inc.*, 223 Conn. 323, 330–31, 612 A.2d 1197 (1992).

[5] I suggest that *Levandoski*'s incorrect distinction between ordinary negligence and premises liability cases, which is reaffirmed in the majority opinion in the present case, is rooted in dictum in footnote 12 in *Lodge*, which initially cited *Furstein* v. *Hill*, supra, 218 Conn. 615–16, for the otherwise unremarkable proposition that "the firefighter rule . . . gives a firefighter the status of a licensee in a personal injury action against a landowner for harm sustained during the course of duty." *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 580 n.12. In *Lodge*, the court further stated that the "firefighter rule is *not directly applicable* in this case because this is not an issue of landowner liability, and we decline to extend the rule to the present situation." (Emphasis added.) Id. As is apparent from the majority's reliance upon it, I believe that the use of this phrase in *Lodge* sowed confusion because the court immediately shifted gears, nevertheless describing the "rationale" of the firefighter's rule as instructive for understanding the policy issues relevant to compensation of firefighters injured in the line of duty, namely, the "inherently hazardous" nature of firefighting, and the fact that "firefighters are adequately compensated for the job they perform and are able to recover workers' compensation for injuries sustained in the course of their employment." Id.

[6] I agree with the majority that economic classism in this area, should it persist as a result of the majority's decision to follow *Levandoski* and confine the rule to premises liability cases, might well present a "good reason to do away with the firefighter's rule entirely," but also, that this case does not present that question. Although the defendant's briefing strategy aptly attempts to harmonize *Levandoski* and the court's earlier decision in *Kaminski*, it nevertheless also invites the court to overrule *Levandoski* as necessary. Bearing in mind well established principles of stare decisis; see, e.g., *Conway* v. *Wilton*, 238 Conn. 653, 658–61, 680 A.2d 242 (1996); I believe that many aspects of *Levandoski* are clearly wrong when read in the context of this court's earlier decisions and subsequent decisions of the Appellate Court. Put differently, I would not entertain overruling the firefighter's rule itself in the present case, but I would overrule *Levandoski* insofar as it stands for the broad proposition that the firefighter's rule does not extend beyond the context of premises liability.

[7] The majority posits that the availability of homeowners insurance mitigates the likelihood of double taxation, in both ordinary negligence and premises liability cases, because that insurance will pay for damages arising from negligently inflicted injuries to police officers and firefighters. I would not consider liability insurance in this aspect of the public policy analysis because insurance companies may well accommodate for increased exposure and costs by some combination of increased premiums or decreased coverage. See R. Heidt, "When Plaintiffs Are Premium Planners for Their Injuries: A Fresh Look at the Fireman's Rule," 82 Ind. L.J. 745, 788–92 (2007) (arguing that first party insurers are better able to account for risks encountered by first responders than are liability insurers, which will lead to increased liability insurance prices, particularly given unpredictable nature of tort awards); accord *Pottebaum* v. *Hinds*, 347 N.W.2d 642, 645–46 (Iowa 1984) ("although we are aware of the widespread existence of liability insurance, we believe these risks are more effectively and fairly spread by

passing them onto the public through the government entities that employ firefighters and police officers"); cf. *Jarmie* v. *Troncale*, 306 Conn. 578, 600–601, 50 A.3d 802 (2012) (declining to extend health care providers' duty of care from patients to general public, with respect to failure to warn patient not to drive, because "[i]njured parties may be covered by their own motor vehicle and health insurance policies," rendering unjustified the "impact of the proposed duty on thousands of physician-patient relationships across the state and the potentially high costs associated with increased litigation").

[8] Citing data from the United States Department of Labor, the majority considers it discriminatory "against public safety officers" to expand the firefighter's rule beyond premises liability cases, observing that "[w]hile there is certainly danger inherent in the job of being a police officer or a firefighter, it is interesting to note that, in terms of the most dangerous public sector jobs, refuse and recyclable collectors ranked as the fifth most dangerous overall job in the United States in 2015, ahead of both firefighters and police officers." The majority observes that, "[d]espite these statistics, we do not have a similar rule for refuse and recyclable collectors. Instead, a refuse and recyclable collector may bring a civil action against third-party tortfeasors responsible for his or her injuries if he or she is injured on someone's property. If one of the foundations underlying the firefighter's rule is that the job of police officers and firefighters are so inherently dangerous that danger and injury are part of the job, it hardly seems justified to extend the rule when statistically there are more dangerous public sector jobs in which we allow the injured worker to pursue recovery from a third-party." (Footnote omitted.) I respectfully disagree.

In my view, the danger of the public safety professions relative to other public sector jobs, such as refuse collection, is not the primary driving policy behind the firefighter's rule. Rather, I view the firefighter's rule as reflective of the fact that, in contrast to more predictable, yet potentially dangerous, activities such as refuse collection and roadway maintenance, many emergencies requiring the services of first responders, such as fires and motor vehicle accidents, are the product of antecedent negligent acts. Accordingly, I reject a public policy that would potentially penalize Connecticut's citizens for calling for assistance in an emergency, and otherwise dissuade them from calling for help sooner, rather than later.

[9] Under limited circumstances; see part I B of this concurring opinion; I agree, however, with the court's rejection of the position that, "simply because the firefighter or police officer has recourse to workers' compensation benefits, he or she should not also be able to recover from a third party based on negligence. We do not ordinarily put such an elevated burden on recovery where, for example, the third party is a product manufacturer, and we see no persuasive reason to do so in the context of the present case. In addition, as the present case indicates, permitting the plaintiff to recover for the defendant's negligence will tend to reduce workers' compensation costs by permitting the plaintiff's employer to recoup those benefits." *Levandoski* v. *Cone*, supra, 267 Conn. 663–64; see also General Statutes § 31-293.

[10] The court blithely stated in *Levandoski* that *Kaminski* "did not present the applicability of the firefighter's rule to a nonlandowner." *Levandoski* v. *Cone*, supra, 267 Conn. 664. The court also noted that, "although, in rejecting the claim of a duty to warn [in *Kaminski*], we used language and cited some out-of-state cases that appear to apply beyond the confines of landowner's liability . . . our principal rationale was consistent with the limitation of the rule to premises liability cases, namely, the risk of double taxation. Thus, we stated: Exposing the negligent taxpayer to liability for having summoned the police would impose upon him multiple burdens for that protection." (Citation omitted; internal quotation marks omitted.) Id. Accordingly, the court stated in *Levandoski* that it "agree[d] with those jurisdictions that have framed the rule as one that relates specifically to premises liability and defines the duty owed by an owner or occupier of land." (Emphasis omitted.) Id.

[11] The court further cited the public policy analysis in the firefighter's rule cases, namely, *Furstein* v. *Hill*, supra, 218 Conn. 619, and *Roberts* v. *Rosenblatt*, supra, 146 Conn. 112, for the proposition that "the public [rather than individual defendants] should compensate its safety officers both in pay that reflects the hazard of their work and in workers' compensation benefits for injuries suffered when the risks inherent in the occupation materialize." (Internal quotation marks omitted.) *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 579–80. Indeed, the court emphasized that firefighters "have been compensated for their risk by society as a whole by way of

workers' compensation as well as other statutory benefits provided to injured firefighters" under General Statutes §§ 7-432 and 7-433b, meaning that "[t]o impose additional liability on the defendants under these circumstances would impose an undue burden on individual members of the public." Id., 580–81. Significantly, the court also "[c]ounterbalanc[ed] the limited benefit of providing [the firefighters] with greater compensation than is available through workers' compensation and other statutory disability and survivor benefits [against] the significant costs that would derive from imposing liability under the facts presented. We frequently have concluded that when the social costs associated with liability are too high to justify its imposition, no duty will be found." Id., 584.

The court also noted that "[i]mposing liability on [the alarm company and its customer] would have the deleterious effect of exempting the party that is primarily responsible for the plaintiffs' harm from all liability," because the municipality, which negligently failed to maintain the fire engine, "normally would be entitled to recover [under General Statutes § 31-293] the full costs of workers' compensation benefits paid to the plaintiffs from any judgment against these defendants. Such exemption would reward the [municipality] for the conduct that directly caused this accident by shifting the entire burden of liability to the shoulders of the defendants for their tangential role in initiating the sequence of events that led to the plaintiffs' injuries." Id., 583–84.

[12] I note that another prominent treatise shares Prosser's view, although it acknowledges that "[e]xtraordinary situations" might exist where deterrence might be a factor, such as certain commercial premises. See 5 F. Harper, et al., Torts (3d Ed. 2008) § 27.14, p. 294 and n.38.

[13] Heidt also cites anecdotal evidence from Connecticut of a case wherein an emergency medical technician sued a heart attack victim after the emergency medical technician slipped on the victim's staircase while moving him into the ambulance. See R. Heidt, "When Plaintiffs Are Premium Planners for Their Injuries: A Fresh Look at the Fireman's Rule," 82 Ind. L.J. 745, 784 n.143 (2007).

[14] As Heidt explains further, "[i]n time, abolition [of the firefighter's rule] would threaten to create at least the appearance of professional rescuers being more willing to risk themselves to save the life and property of some members of the public than of others similarly situated. Suits by professional rescuers arising from a peril may raise doubts about the integrity of the subsequent investigation of the peril, and undermine the public perception of rescuers, the morale of the squad, and the self-respect of individual rescuers. The incentive the prospect of tort recovery gives rescuers to exaggerate their injuries and malinger collides head-on with the culture and the norms that help rescuers serve their mission. Crime victims and home and business owners who are aware of the toxic character of litigation, especially for defendants, may, when faced with a peril, think twice about summoning the professionals, much to the disadvantage of society." R. Heidt, supra, 82 Ind. L.J. 787–88; see also id., 788 ("in light of the other incentives operating on potential defendants, liability seems likely to yield only a modest improvement in precaution taking against police and fire perils").

[15] Given that public policy concerns about chilling our citizens' willingness to report emergencies already have formed a basis for our common-law decision making in *Kaminski* v. *Fairfield*, supra, 216 Conn. 38–39, and *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 580–81, I submit that the legislature is the appropriate forum for any reexamination of the legislative facts underlying our common-law decisionmaking. See *Campos* v. *Coleman*, 319 Conn. 36, 66, 123 A.3d 854 (2015) (*Zarella, J.*, dissenting) ("[T]he legislature, unlike this court, is institutionally equipped to gather all of the necessary facts to determine whether a claim for loss of parental consortium should be permitted and, if it should, how far it should extend. The legislature can hold public hearings, collect data unconstrained by concerns of relevancy and probative value, listen to evidence from a variety of experts, and elicit input from industry and society in general." [Emphasis omitted.]).

[16] The majority criticizes me for reading its holding, namely that "the firefighter's rule should [not] be extended beyond the scope of premises liability," broadly and suggesting that its holding might well lead to an alleged "parade of horribles that transforms the firefighter's rule far beyond its definition," including lawsuits against victims of crime and motor vehicle accidents. The majority posits that "[t]his suggestion transforms the firefighter's rule into a much broader debate about common-law negligence, duty, and responsibility," and "goes far beyond the facts of the present case and

amounts to a general advisory opinion." I adamantly disagree with this assertion, and note that, on the one hand, the majority argues that the "doctrine should be confined to the facts of the present case insofar as it involves a property owner." On the other hand, it repeatedly uses broad language stating that the firefighter's rule has no application beyond a certain class of cases. Part II of this concurring opinion provides a narrow, case-specific resolution to the discrete legal issue presented in this case. My use of a so-called "parade of horribles" in this section is merely to demonstrate the real world implications of the majority's application of the firefighter's rule. The words that we use in our opinions matter; they have real world consequences, and a broad statement with regard to the applicability of the firefighter's rule will have a direct effect on our future cases. Accordingly, I embrace the public policy-based approach to the firefighter's rule precisely because it affords us the flexibility to accommodate for the unique facts of each case. See, e.g., *Baldonado* v. *El Paso Natural Gas Co.*, supra, 143 N.M. 293.

[17] See *Carson* v. *Headrick*, supra, 900 S.W.2d 686–87.

[18] See *Walters* v. *Sloan*, supra, 20 Cal. 3d 201–202.

[19] See *Moody* v. *Delta Western, Inc.*, supra, 38 P.3d 1140; *Berko* v. *Freda*, supra, 93 N.J. 83.

[20] See *Kennedy* v. *Tri-City Comprehensive Community Mental Health Center, Inc.*, 590 N.E.2d 140, 141 (Ind. App. 1992).

[21] See *Babes Showclub, Jaba, Inc.* v. *Lair*, supra, 918 N.E.2d 309–10; *Pottebaum* v. *Hinds*, supra, 347 N.W.2d 643; *Farmer* v. *B & G Food Enterprises, Inc.*, supra, 818 So. 2d 1155–56.

[22] See *Pinter* v. *American Family Mutual Ins. Co.*, supra, 236 Wis. 2d 142; see also *England* v. *Tasker*, supra, 129 N.H. 468 (police officer injured knee while extricating passenger from defendant's wrecked car). As the majority notes, I recognize that some jurisdictions, including a Connecticut Superior Court, have held that the firefighter's rule does not extend to emergency medical personnel—particularly those who are not public employees. See *Nagy* v. *Arsenault*, Superior Court, judicial district of Windham, Docket No. CV-14-6007793-S (May 21, 2015) (60 Conn. L. Rptr. 389); see also, e.g., *Krause* v. *U.S. Truck Co.*, 787 S.W.2d 708, 713 (Mo. 1990) (en banc); cf. *Heck* v. *Robey*, 659 N.E.2d 498, 500–504 (Ind. 1995) (firefighter's rule did not bar paramedic's claim when patient's acts of negligence took place after paramedic's arrival at scene, when patient was kicking and flailing during extrication from car). I note that, although I cite *Pinter* as illustrative of the lack of a firefighter's rule, I leave to another day the question of whether the firefighter's rule applies to emergency medical personnel.

[23] See *Wietecha* v. *Peoronard*, 102 N.J. 591, 595, 510 A.2d 19 (1986) (per curiam); *Ellinwood* v. *Cohen*, 87 A.3d 1054, 1056 (R.I. 2014); *Fordham* v. *Oldroyd*, supra, 171 P.3d 412; see also *Steelman* v. *Lind*, supra, 97 Nev. 428–29 (police officer struck by vehicle while parked behind truck driver gathering fallen cargo cannot recover against truck driver for having negligently secured freight).

[24] As the Kansas Supreme Court comprehensively explained in *Apodaca* v. *Willmore*, supra, 306 Kan. 113–14, the legislatures of several states, including California, Nevada, and New Hampshire, have codified the firefighter's rule in their respective statutes. See Cal. Civil Code § 1714.9 (Deering 2015); Nev. Rev. Stat. § 41.139 (2015); N.H. Rev. Stat. Ann. § 507:8-h (West 2010). Accordingly, I do not understand why the majority criticizes my reliance on the Nevada Supreme Court's decision in *Steelman* v. *Lind*, supra, 97 Nev. 425, insofar as that state's firefighter's rule statute codified that decision, the reach of which had been limited to those acts of negligence occasioning the first responder's presence on the scene. See *Borgerson* v. *Scanlon*, 117 Nev. 216, 220–21, 19 P.3d 236 (2001); *Moody* v. *Manny's Auto Repair*, 110 Nev. 320, 328, 871 P.2d 935 (1994).

Several other state legislatures have, however, limited or abrogated their common-law firefighter's rules. See, e.g., Fla. Stat. Ann. § 112.182 (1) (West 2014) (premises liability); Minn. Stat. Ann. § 604.06 (West 2010); *Ruiz* v. *Mero*, 189 N.J. 525, 536–38, 917 A.2d 239 (2007) (noting that state legislature abolished firefighter's rule except as to officer's employer or co-employee); *Wadler* v. *New York*, 14 N.Y.3d 192, 194, 925 N.E.2d 875, 899 N.Y.S.2d 73 (2010) (noting that state statute limits firefighter's rule to actions against officer's employer or co-employee).

I disagree with the majority's position that the Florida and New Jersey statutes blunt the persuasive impact of the decisions of the state supreme courts in *Lanza* v. *Polanin*, supra, 581 So. 2d 130, and *Berko* v. *Freda*, supra, 93 N.J. 81, with respect to the present case. First, the Florida statute is

plainly and unambiguously cast in terms of premises liability, and my research reveals no case law expanding it beyond that context. See Fla. Stat. Ann. § 112.182 (1) (West 2014) ("A firefighter or properly identified law enforcement officer who lawfully enters upon the premises of another in the discharge of his or her duty occupies the status of an invitee. The common-law rule that such a firefighter or law enforcement officer occupies the status of a licensee is hereby abolished."). Second, although the New Jersey statute largely abolishes the firefighter's rule in that state, the reasoning of *Berko* v. *Freda*, supra, 93 N.J. 84–91, remains persuasive and instructive in the context of the common law. See, e.g., *Moody* v. *Delta Western, Inc.*, supra, 38 P.3d 1141.

[25] As the majority points out, the appellate courts of a small minority of jurisdictions, notably Oregon and South Carolina, have rejected the firefighter's law as a matter of common law. See also *Court* v. *Grzelinski*, supra, 72 Ill. 2d 150–51 (limiting firefighter's rule to premises liability cases); *Angelo* v. *Campus Crest at Orono, LLC*, United States District Court, Docket No. 1:15CV469 (JCN) (D. Maine February 1, 2016) (discussing two Maine trial court decisions declining to adopt firefighter's rule, and denying motion to dismiss because the state's supreme court had not yet adopted firefighter's rule, with further consideration of issue "more appropriately made with a fully-developed record"). The leading case on the minority view is *Christensen* v. *Murphy*, supra, 296 Or. 619–21, which relied largely on the statutory abolition of assumption of risk in abandoning the firefighter's rule, noting that "so-called policy reasons [in support of firefighter's rule] are merely redraped arguments drawn from premises liability or implied assumption of risk, neither of which are now available as legal foundations in this state." I view *Christensen*, including its reliance on Prosser's criticism, as inconsistent with our decisions in *Kaminski* v. *Fairfield*, supra, 216 Conn. 38–39, and *Lodge* v. *Arett Sales Corp.*, supra, 246 Conn. 584–85. *Christensen* also is also inconsistent with our well established duty and public policy analysis; see, e.g., *Lawrence* v. *O & G Industries, Inc.*, supra, 319 Conn. 650–51; because the Oregon Supreme Court expressly declined to consider the costs and benefits of increased litigation in its analysis of the firefighter's rule. See *Christensen* v. *Murphy*, supra, 620.

The South Carolina Supreme Court's decision in *Minnich* v. *Med-Waste, Inc.*, 349 S.C. 567, 564 S.E.2d 98 (2002), is similarly unpersuasive. In that case, the South Carolina Supreme Court declined to adopt the firefighter's rule as question of first impression because "those jurisdictions which have adopted the firefighter's rule offer no uniform justification therefor, nor do they agree on a consistent application of the rule. The legislatures in many jurisdictions which adhere to the rule have found it necessary to modify or abolish the rule." Id., 575. I disagree with this analysis, insofar as its criticism of the doctrine's exceptions fails to appreciate the nuance necessary to achieve a rule that is just for both citizen and first responder.

I do, however, disagree with the majority's reliance on *Hopkins* v. *Medeiros*, 48 Mass. App. Ct. 600, 724 N.E.2d 336 (2000), for the proposition that Massachusetts has rejected the firefighter's rule as a matter of common law. Although the *Hopkins* decision had some discussion of the minority of jurisdictions that have rejected the firefighter's rule as a matter of common law, such as *Christensen* v. *Murphy*, supra, 296 Or. 610, it ultimately decided the issue on statutory grounds, relying on the existence of "two [state] statutes . . . that grant police officers the right to file suit against alleged tortfeasors . . . . The [l]egislature has thereby expressly chosen not to immunize such individuals from suits in tort. We think this consideration decisive, and it constrains us to conclude that the firefighter's rule has no continuing vitality in Massachusetts. To conclude otherwise would contravene legislative intent." *Hopkins* v. *Medeiros*, supra, 608–609.

Finally, I disagree with the majority's reliance on *Thompson* v. *FMC Corp.*, 710 So. 2d 1270, 1271 (Ala. Civ. App. 1997), and *Bath Excavating & Construction Co.* v. *Wills*, 847 P.2d 1141, 1146–47 (Colo. 1993), for the proposition that those jurisdictions have "refused" or "declined" to adopt the firefighter's rule. Those cases stand only for the far different proposition that the Alabama Court of Civil Appeals and the Colorado Supreme Court did *not* need to reach the question of whether to adopt a firefighter's rule on the facts of those cases. See *Thompson* v. *FMC Corp.*, supra, 1271 ("we need not decide whether this state should adopt the firefighter's rule"); *Bath Excavating & Construction Co.* v. *Wills*, supra, 1147 ("we do not believe that the underlying rationale of the cases from other jurisdictions that have adopted a fireman's rule would extend" to water department employee, and therefore "[w]e express no view on the question of whether Colorado should

judicially adopt a no-duty fireman's rule").

[26] I note that the trial court in *Levandoski* had held that "the firefighter's rule should be extended to nonpremises liability cases, but that the so-called 'subsequent negligence' exception to the rule would also apply. Under that exception, a police officer is not treated as a licensee when the defendant engages in negligent acts after the police officer arrives at the scene." *Levandoski* v. *Cone*, supra, 267 Conn. 658 n.5. This court did not consider whether "subsequent negligence" exception to the firefighter's rule applies, instead stating more broadly that "the firefighter's rule simply does not apply" in nonpremises liability cases. Id.

[27] I note, however, that not all courts share this view of the firefighter's rule. See *Zanghi* v. *Niagara Frontier Transportation Commission*, 85 N.Y.2d 423, 440, 649 N.E.2d 1167, 626 N.Y.S.2d 23 (1995) ("For example, if a police officer who is simply walking on foot patrol is injured by a flower pot that fortuitously falls from an apartment window, the officer can recover damages because nothing in the acts undertaken in the performance of police duties placed him or her at increased risk for that accident to happen. On the other hand, if an officer is injured by a suspect who struggles to avoid an arrest, the rule precludes recovery in tort because the officer is specially trained and compensated to confront such dangers."), superseded in part by statute as stated in *Wadler* v. *New York*, 14 N.Y.3d 192, 194, 925 N.E.2d 875, 899 N.Y.S.2d 73 (2010) (noting that N.Y. Gen. Oblig. Law § 11-106 [McKinney 2017] limits firefighter's rule to actions against employer or co-employee); *Juhl* v. *Airington*, 936 S.W.2d 640, 647–48 (Tex. 1996) (Gonzalez, J., concurring) (urging court to adopt firefighter's rule to bar claims of police officer against abortion clinic demonstrator, arising from officer's injuries sustained while forcibly removing demonstrator from premises).

[28] Given the broad manner in which we construe allegations in a complaint in deciding a motion to strike, I recognize that the rather sparse allegations in the complaint might also be understood to encompass conduct that reflects a person needing assistance during a mental health emergency, in addition to having committed criminal conduct. Accordingly, I reserve further judgment on this matter, including the scope of any duty owed, until discovery proceeds and a factual record is developed.

---