UNITED STATES DISTRICT COURT 
 DISTRICT OF CONNECTICUT 

ALEXANPlDaRinAti HffOWARD, 
 v. , Civil No. 3:22-cv-418 (JBA) 

LESLIE’S POOLMART, INC., TRISTAN ORTIZ, 
CINDY EDWARDS, JENNIFER DEMAYO, AND 
 August 16, 2023 
SHAUNA VILLASENOR, in their individual and 
professDioenfeanl dcaapntasc ities, 
 ORDER GRANT.ING IN PART AND DENYING IN PART DEFENDANTS’ MOTION TO 
 DISMISS 
 Defendants Leslie’s Poolmart, Inc. (“Leslie’s”), Tristan Ortiz (“Mr. Ortiz”), Cindy Edwards 
(“Ms. Edwards”), Jennifer Demayo (“Ms. DeMayo”), and Shauna Villasenor’s (“Ms. 
Villasenor”), all current or former employees of Leslie’s, move [Doc. # 28] to dismiss all 12 
 1 
counts of Plaintiff Alexandra Howard’s Amended Complaint [Doc. # 24] pursuant to 
12(b)(1) and (12(b)(6). (Defs.’ Mem. of Law in Support of Mot. to Dismiss [Doc. # 29] at 1.) 
Plaintiff was an Assistant Store Manager at the Milford, Connecticut Leslie’s location, during 
which time she began a consensual sexual relationship with Defendant Ortiz, the Store 
Manager at the Fairfield, Connecticut Leslie’s location. The Amended Complaint asserts a 
variety of statutory and common law claims arising from the alleged mistreatment of 
Plaintiff by Defendants after she ended the sexual relationship with Mr. Ortiz. 

1 
 Plaintiff filed her initial Complaint on March 21, 2022 and filed the operative Amended 
Complaint on September 22, 2022. 
 In her opposition brief [Doc. # 30], Plaintiff states she does not oppose dismissal of 
Counts Six, Seven, Eight, Nine, Eleven, and Twelve. (Pl.’s Opp’n at 1.) Thus, at issue here are 
only Counts One (Title VII – Discrimination based on Race, Color, and Sex), Two (Title VII - 
Retaliation), Three (42 U.S.C. § 1981 – Discrimination and Retaliation), Four (Conn. Gen. Stat 
§ 46a60(A)(1) – Discrimination based on Race, Color, and Sex), Five (Conn. Gen. Stat § 
46a60(a)(4) – Retaliation), and Ten (Intentional Infliction of Emotional Distress). Counts 
One, Two, Four, and Five are against Defendant Leslie’s only, Count Three is against all 
DI. efendBanatcsk, garnodu Cnodu nt Ten is against all individual Defendants. 

 Plaintiff Alexandra Howard is an African American woman who worked for Defendant 
Leslie’s commencing on December 17, 2017, where she most recently held the position of 
Assistant Store Manager at the Milford Leslie’s location. (Am. Compl. ¶¶ 16-18.) While 
serving in that position, Plaintiff began a sexual relationship with Tristan Ortiz, a Hispanic 
male Store Manager atI dth. e Fairfield Leslie’s location, a relationship she terminated around 
the end of May 2020. ( ¶ 19.) Approximately two weeks after theI edn. d of that relationship, 
Plaintiff alleges she was subjected to a hostile work environment. ( ¶ 20.) Plaintiff alleges 
that “Mr. Ortiz would offer Plaintiff his assistance with a work-related task in exchange for 
sexual favors,” that Plaintiff would be ignored and treated with hostility when trying to 
interact with the Fairfield store (where Mr. Ortiz was manager), and that Plaintiff received 
an item she had requested from the Fairfield location thIadt. featured a transfer slip addressed 
to “He who shall not be named,” referring to Plaintiff. ( ¶¶ 21-26.) When Plaintiff sent an 
associate, Jared Klukas, to pick up an order from the Fairfield store, and he was mistreated 
by Fairfield Assistant Manager Kate Nadonly, Milford Store Manager Defendant CindIdy. 
Edwards, who witnessed this behavior, reached out to Mr. Ortiz regarding the incident. ( 
¶¶ 26-27.) 
 On July 11, 2020, Plaintiff contacted Defendant Ortiz to “cIlde.ar the air,” but Defendant 
Ortiz was “verbally aggressive towards Plaintiff” on the call. ( ¶ 28.) Following the call, 
Plaintiff conIdta.cted her district manager, Defendant DeMayo, and informed her of Mr. Ortiz’s 
behavior. ( ¶ 29.) Plaintiff informed Ms. DeMayo that Plaintiff intended to reach out to 
Human Resources (HR) and that she did not feel comfortable returning to work until HR was 
involved, but Ms. DeMayo stated she would reach out to HR for Plaintiff in order to follow 
the proper chain of command, and suggestIedd. that if Plaintiff herself reported to HR, it could 
affect both Plaintiff’s and Mr. Ortiz’s jobs. ( ¶¶ 29-31.) 
 On July 12, 2020, Ms. Edwards informed Plaintiff that Ms. DeMayo had contacted Mr. Ortiz 
and his Assistant Store Manager prior to contacting HR, at which point Plaintiff contacted 
Ms. Demayo and informed her that she did not feel comIfdo.rtable coming to work due to the 
hostile work environment she was being subjected to. ( ¶¶ 33-34.) On July 13, 2020, Ms. 
DeMayo contacted Ms. Villasenor in HR, and Ms. Villasenor contacted Plaintiff seeking 
further information. Plaintiff explained her previous relationship with Mr. Ortiz, the 
harassment she waIds. facing, and the impact the situation was having on her well-being and 
job performance. ( ¶¶ 35-37.) On July 14, 2020, Ms. Villasenor informed Plaintiff there was 
nothing HR could do about the situation, that Plaintiff should continue to have other 
employees call the Fairfield location as a remedial measure, and that Plaintiff Iwda. s expected 
to appear for her next shift regardless of her discomfort from recent events. ( ¶¶ 38-40.) 
When Plaintiff advised she was uncomfortable returning to work until the matter was 
resolveIdd, .Ms. Villasenor threatened to hang up the phone and insisted Plaintiff return to 
wIdo.rk. ( ¶ 41.) Later on July 14, 2020, Plaintiff gave Ms. Villasenor her verbal resignation. 
( ¶ 43.) On July 20, 2020, Plaintiff contacted Leslie’s CEO (Michael Egeck), CFO (Steve 
Ortega) and Vice President of HR (Bobby Quihuis) informing them thIadt. she did not feel her 
situation was properly handled by Ms. DeMayo or Ms. Villasenor. ( ¶ 47.) Ms. Quihuis 
stated HR would investigate her claim, and Plaintiff provided HR with supporting 
 Id. 
correspondence and evidence. ( ) On August 25, 20Id2.0, Plaintiff received an email from Ms. 
Quihuis that HR’s investigation was inconclusive ( ¶ 48.) and offering her $1000 if she 
wIdo.uld sign a Non-Disclosure Agreement (NDA) which stated Plaintiff could not sue Leslie’s. 
( ¶¶ 48-49.) Plaintiff responded on August 30, 2020 that she would not acceptI dt.he NDA 
nor accept the offer of $1000, after which she ceased cIodn.tact with Defendants. ( ¶¶ 49, 
53.) Mr. Ortiz left Leslie’s about a month after Plaintiff. ( ¶ 54.) 
 Plaintiff alleges she was discriminated against because she is Black, that Black woman 
are offered significantly less to sign NDAs with Leslie than non-Black women, that her 
complaints were not taken seriously because of her race, anIdd. that Leslie’s “fosters a culture 
of racism, bigotry and favoritism” of non-Black employees. ( ¶¶ 58-62.) Plaintiff notes that 
all indivIdid.uals who harassed her or who failed to protect her from harassment were not 
Black. ( ¶ 71.) 
 On September 4, 2020, Plaintiff was informed that her nine-year-old daughter, who 
resided with PlaIidn.tiff’s mother in Texas, was in a coma with no brain activitIdy .due to medical 
complications. ( ¶ 72.) Plaintiff’s daughter died on September 16, 2020. ( ¶ 76.) Plaintiff 
experienced severe mental and emotional distress in response to this tragic event, stating 
she was “immobilized by grief, guilt, anxiety, self-harm, mental suffering, suicidal ideation 
and depression” – a period of immobilization that PlaiIndt.iff says lasted until she was finally 
able to bury her daughter’s ashes on April 13, 2021. ( ¶¶ 74-85.) Plaintiff also recounts 
that she was in a relationship with a domestic abuser starting in September 2020, which she 
reported to the police resulting in several arrests and restIrda.ining orders, most recently in 
August 2021 when Plaintiff’s abuser broke into her home. ( ¶¶Id 8.8-91.) That abuser is now 
incarcerated for his domestic violence crimesp argoa sinest Plaintiff. ( ¶ 92.) 
 On August 30, 2021, Plaintiff dual-filed a complaint (“administrative complaint”) 
with the Connecticut Commission on Human RightsId a.nd Opportunities p(CroH RseO ) and the Equal 
Employment Opportunity Commission (EEOC). ( ¶¶ 93-94.) The administrative 
complaint alleged discrimination on the basis of sex, sexual harassment in violation of 
CFEPA, Conn. Gen. Stat. § 46a-60, and Title VIIId o.f the Civil Rights Act of 1964. (CHRO Case No. 
 2 
2230104 – EEOC No. 16A-2021-01372); ( ¶ 7.) On December 22, 2021, the CHRO 
dismissed the Complaint, finding the Complaint was untimely, and issued a Release of 
Jurisdiction. (Am. CIodm. pl. ¶ 9.) The EEOC issued a Dismissal of Charge and Right to Sue on 
IJaI.n uaryL 2eg5a, 2l 0S2ta2n. d(ar d¶ 8.) 
 When deciding a motion to dismiss under Rule 12(b)(6), the Court must determine 
whether the plaintiff has stated a legally cognizable claim bsye em Baekliln Agt la. lCleograpt. ivo. nTsw tohmatb, liyf true, 
would plausibly show that the plaintiff is entitled to relief, , 550 
U.S. 544, 557 (2007), by accepting all factual allegaSteieo nCsr ainw tfhoer dc ovm. Cpulaoimnto as true and drawing 
all reasonable inferences in the plaintiff’s favor. , 796 F.3d 252, 256 
 3 
(2d Cir. 2015). However, this principle does not extend to “[t]hreadbarAe srheccriotfatl sv . oIfq bthael 
elements of a cause of action, supTpwoormtebdl yby mere conclusory statements.” , 
556 U.S. 662, 678 (2009) (citing , 550 U.S. at 555). BecausIeq b“aolnly a complaint that 
states a plausible claim for relief survives a motion to dismiss,” , 55.6” AUr.iSs.t aa tR e6c7o9r,d as 
cLoLmC pvl. aDinote m3ust contain “factual amplification . . . to render a claim plausible
 , 604 F.3d 110, 120 (2d Cir. 2010). A complaint that only “offers ‘labels and 

2 
 In considering this motion, the CourSte me DaiyF coolcnos vid. MerS PNlBaiCn Ctiaffb’sle a Ld.Lm.Cinistrative complaint, as 
documents referred to and incorporated into a complaint are properly considered in 
connection with a motion to dismiss. ., 622 F.3d 104, 111 (2d 
Cir. 2010) (“In considering a motion to dismiss for failure to state a claim pursuant to Rule 
12(b)(6), a district court may consider the facts alleged in the complaint, documents 
a3 ttached to the complaint as exhibits, and documents incorporated by reference in the 
complaint.”). 
Unless otherwise indicated, internal citations, quotation marks, and other alterations are 
omitted throughout in text quoted from court decisions. 
conclusions’” or “naIqkbeadl assertions devoid of furthTerw foamctbulayl enhancement” will not survive a 
motion to dismiss. , 556 U.S. at 678 (quoting , 550 U.S. at 555, 557). 
 “[A] claim is properly dismissed for lack of subject matter jurisdiction under Rule 
1M2o(rbr)is(o1n) wv. hNeant ’tlh Aeu dsitsrtarliicat Bcoaunrkt L latdcks the statutory or constitutional power to adjudicate it.” 
 ., 547 F.3d 167, 170 (2d Cir. 2008). “When considering a 
motion to dismiss pursuant to Rule 12(b)(1), the court must take all facStws eaeltle vg. eSdh eianh tahne 
complaint as true and draw all reasonable inferences in favor of plaintiff.” , 
235 F.3d 80, 83 (2d Cir. 2000). In response to a motion to dismiss pursuant to Rule 12(b)(1), 
“[a] plaintiff asserting subject matter jurisMdiacktiaorno vah avs. Utnhiete db Sutradteens of proving by a 
preponderance of the evidence that it exists.” , 201 F.3d 110, 113 
(2d Cir. 2000). 
III. Discussion 
 A. Administrative Exhaustion 

 Defendants argue that the racial discrimination claims advanced in Counts One and Four, 
as well as the retaliation claims advanced in Counts Two and Five, must be dismissed because 
Plaintiff failed to exhaust administrative remedies. (QDueifns.o’ nMees mv.. aKto 1h4le-r1 6M.)i xE xShpaecuisatlitoiens “, iLs LaCn 
essential element of Title VII’s statutory scheme.” see also , 
2010 WL 1782030 at *2 (D. Conn. April 30, 2010); Conn. Gen. Stat. § 46a-100 
(providing that a person who has obtained a release from the CHRO in accordance with 
§ 46a–101 may bring an action to the superior court if the party has filed a timely complaint 
with the commission in accordance with Connecticut General Statutes § 46a–82.) Defendants 
point out that Plaintiff never made a race/color discrimination or retaliation claim before 
the CHRO or EEOC, and therefore failed to exhaust her administrative remedies requiring 
dismissal. (Defs.’ Mem. at 15.) 
 Plaintiff argues that even if she failed to include claims before the CHRO and EEOC, she 
may still pursue such claims in feLdeegranla cno vu.r At liift athlioas Lei cnleaei mAes raeree I “traeliaasnoeni aSb.Ply.A related to those 
that were filed with the agency.” ., 274 F.3d 683, 
686 (2d Cir. 2001). "Reasonably related" claims are recognized in three situations: (1) the 
alleged discriminatory conduct "would fall within the scope of the EEOC investigation which 
can reasonably be expected to grow out of the charge of discrimination;" (2) the claim is one 
of "retaliation by an employer against an employee for filing an EEOC charge;" and (3) the 
plaintiff "alleges further incidTeenrtrsy o vf .d Aisschrcirmofitnation carried out in precisely the same manner 
alleged in the EEOC charge." , 336 F.3d 128, 151 (2d Cir. 2003). Courts look 
at "factual allegations made in the [EEOC] charge itself, describing the discriminatory 
conduct Laibttoluejto whnh ivc.h C ait yp loafi nNteiwff iYso grrkieving" to determine whether the claims are reasonably 
related. , 795 F.3d 297, 322 (2d Cir. 2015). Defendants argue 
that complaints based on one proSteeec, tee.dg. cPlalesas ua vr.e C neontt r“ixreasonably related” to complaints 
based on another protected class. , , Inc., 501 F. Supp. 2d 321, 326 (D. 
Conn. 2007) (“Moreover, courts in the Second Circuit have generally held that claims alleging 
discrimination based upon a protected classification which are different than the protected 
classification asserted in administrative filings are not reasonably related.”). But the Second 
Circuit has made clear this is a fact-intensive determination, holding that: 
 “[I]f the factual allegations in the EEOC charge suggest two forms of 
 discrimination—even though the charge itself specifies only one—so that the 
 agency receives adequate notice to investigate discrimination on both bases, 
 the claims are reasonably related to each other. This exception to the 
 exhaustion requirement for reasonably related claims is based on the 
 recognition that EEOC charges frequently are filled out by employees without 
 the benefit of counsel and that their primary purpose is to alert the EEOC to 
Littlejohthne discrimination t hat a plaintiff claims [she] is suffering.” 

 , 795 F.3d at 322. 
 The question becomes whether, in this case, the facts alleged in Plaintiff’s administrative 
complaints provided adequate notice to the agencies to investigate Plaintiff’s race 
discrimination and retaliation claims where the administrative complaint makes no mention 
of race or color discrimination. Because the administrative complaint did not put the 
agencies on notice of any race or color discrimination claims, those portions of Count 1 and 
Count 4 are dismissed. By contrast, Plaintiff’s retaliation claims are plausibly encompassed 
by her administrative complaint. Plaintiff’s administrative complaint alleged that Ms. 
Demayo “encouraged [her] not to report anything to Human Resources, stating it could 
affect” her job. (CHRO Compl. ¶ 23.) This allegation plausibly puts the CHRO and EEOC on 
notice oBf. the pSotsastibuitleit yo fo Lf irmetiatlaiatitoionns. 

 Defendants argue that Counts One, Two, Four and Five should be dismissed as untimely 
because, under both Title VII and the CFEPA, a charge regarding the basis for a claim must 
be filed with the EEOC and/or CHRO within 300 days of the alleged discriminatory act, and 
Plaintiff did not dual-file her administrative complaint until August 30, 2021, a full year after 
the last interaction Plaintiff had with Defendants. The CHRO dismissed Plaintiff’s Complaint 
as untimely, finding: 
 The Complainant alleges that she resigned from her position on July 14, 2020 
 because of the Respondent’s abusive and discriminatory behavior. For 
 incidents which occurred after October 1, 2019, Connecticut General Statutes 
 §46a-82(f) provides that “Any complaint filed pursuant to this section…shall 
 be filed not later than three hundred days after the date of the alleged act of 
 discrimination…”. This complaint was filed on August 30, 2021; 412 days after 
 July 14, 2020. Therefore, the allegations are untimely, and the complaint must 
 be dismissed. 

(Ex. A to Defs.’ Mem (Rhinehart Decl.) Ex. 2 ¶ 5.) 
 Plaintiff argues the 300-day limitations period should be equitably tolled in light of her 
reaction to the tragic death of her daughter which occurred shortly after her departure from 
Leslie’s, as well as due to her struggles as a victim of domestic violence in that time period. 
Defendants argue that such tragic circumstances ultimately do not entitle Plaintiff to 
equitable tolling. (Defs.’ Mem. at 11.) 
 “To determine whether equitable tolling is appropriate, a court considers whether the 
person seeking application of the equitable tolling doctrine (1) has acted with reasonable 
diligence during the time period she seeks to have tolled, and .(”2 P) ehreazs vp. rHoavrebdo rt hFaret igthhet 
cTioroculsm, stances are so extraordinary that the doctrine should apply 
 698 F. App'x 627, 628 (2d Cir. 2017). Defendants observe that even after April 13, 
2021, which Plaintiff notes as the end-date for the period in which she was immobilized by 
grief, Plaintiff still waited several months before dual-filing with the CHRO and EEOC in 
August. 
 But equitable tolling is appropriate “where a plaintiff's meSdeicea Zl ecroilnlid-Eitdioelng loars s mv.e Nnetawl 
Yimorpka iCrimtye Tnrta pnrseivt eAnuttehd her from proceeding in a timelya fsa sahmioenn.d” ed
 ., 333 F.3d 74, 79 (2d Cir. 2003), (July 29, 2003). Plaintiff 
alleges that she went through a period of immense tragedy, disruption, and threats to her 
well-being in the time following her departure from Leslie’s, with profound effects on her 
mental health. On September 4, 2020, just 10 days after HR informed Plaintiff that their 
investigation of her complaint would not provide redress, Plaintiff learned that her nine-
year-old daughter was in a coma with no brain activity. (Am. Compl. ¶¶ 48, 72.) Following 
her daughter’s death, Plaintiff sufferedid a. prolonged period of mentally destabilizing and 
immobilizing grief until April of i2d0.21 ( ¶¶ 74-85) and was subject to threats of domestic 
violence as late as IAdu.gust 2021 ( ¶¶ 88-91). Plaintiff filed her administrative complaint on 
August 30, 2021. ( ¶¶ 94.) These allegations support a plausible claim that Plaintiff acted 
with reasonable diligence in light of her suffering from the sort of “extraordinary” 
circumstances meriting equitable tolling. “The Second Circuit has repeatedly admonished 
that questions of mental capacity should not be resolved on a motion to dismiss.” 
Szuszkiewicz v. JPMorgan Chase Bank 
Stella v. Potter , 12 F. Supp. 3d 330, 339 n.5 (E.D.N.Y. 2014) (citing 
 , 297 Fed. Appx. 43, 46 (2d Cir. 2008) (summary order) (reversing dismissal 
pursuant to Rule 12(c) because the district court should have accepted plaintiff's allegation 
that his mental illness, depression, prevented him from timely notifying an EEOC 
counseClo.r )). DHefoesntdilaen Wts’o mrko tEionnv itroo dnismmeinsst Plaintiff’s claims as time-barred is denied. 

 Counts One and Four of the Amended Complaint allege, in part, that Leslie’s violated Title 
VII and the CFEPA by permitting a hostile work environment based on Plaintiff’s sex/gender. 
(Am. Compl. ¶¶ 105-108, 127-132.) Defendants deny that the experiences suffered by 
Plaintiff rose to the level of seriousness necessary to constitute a hostile work environment. 
To state a claim for a hostile work environment, Plaintiff must adequately plead that she 
“subjectively perceived the environment to be abusive”; (ii) that “the environment was 
objectively hostile and abusive”; and (iii) “the extent Gtoo rwzyhnicshk it hv.e JceotBnlduuec At oircwcuaryrse Cdo brpecause 
of the plaintiff's membership in a protected class.” ., 596 
SFe.3ed C 9r3ai, n1e0 2v. (T2rdin Citiry. 2Co0l1le0g)e. The same standard applies to both the federal and state claims. 
 , 259 Conn. 625, 637 n. 6 (2002) (“We look to federal law for 
guidance on interpreting state employment discrimination law, and the analysis is the same 
under both.”). Plaintiff must allege facts plausibly showing “that the workplace [was] 
permeated with discriminatory intimidation, ridicule, and insult that is 
sufficiently severe or pervasive to alBteoro tnhmea cloenrtd ivt.i oCnitsy ooff t hNee wvi cYtoimrk's employment and create 
an abusive working environment.” , 721 F. App'x 29, 33 (2d 
Cir. 2018). “To determine whether an incident or series of incidents is 
sufficiently severe or pervasive to alter the conditions of a plaintiff's work environment 
[courts] must consider the totality of the circumstances, including the frequency of the 
discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a 
mere offensiveI udt.terance; and whether it unreasonably interferes with an employee's work 
performance.” 
 Plaintiff’s allegations of the hostile work environment focus on Ortiz’s request for sexual 
favors in exchange for work-related assistance, his verbal aggression during the phone call 
with her, her receipt of an item from Ortiz’s Fairfield location addressed to “He who shall not 
be named,” and Fairfield location staff ignoring her. Defendants argue that these allegations 
are conclusory and not sufficiently severe or pervasive to constitute a hostile work 
environment. 
 Plaintiff has pled sufficient facts to allege a hostile work environment. To defeat a motion 
to dismiss hostile work environment claims “a plaintiff need only plead facts sufficient to 
support the conclusion that she was faced with harassment . . . of such quality or quantity 
that a rePaastoannaeb lve. eCmlaprkloyee would find the conditions of her employment altered for the 
worse.” , 508 F.3d 106, 113 (2d Cir. 2007). Plaintiff alleges that once she 
ceased having sex with Defendant Ortiz, he and his colleagues refused to cooperate with her 
on work-related matters, and Mr. Ortiz conditioned further work-related cooperation on 
Plaintiff having sex with him. Plaintiff complained of this conduct to HR and received no 
remediation other than being told to have her associates interact with the Fairfield store 
instead of doing so herself. These facts as pled plausibly support the conclusion that she was 
harassed continuously and in a manner such that “a Irde.asonable employee would find the 
conditions of her employment altered for the worse.” 
 Defendants also point to Plaintiff’s statement that she resigned from Leslie’s only three 
days after complaining to Ms. DeMayo. “[I]f an employer is truly to be afforded an 
opportunity to remedy discrimination in the workplace, theSne es Luurpelayc cthhine o wv.i AnDdoPw of 
opportunity for such resolution must last longer than three days.” , Inc., 
No. 3:02CV2281 (MRK), 2005 WL 293508, at *7 (D. Conn. Jan. 21, 2005). Here, prior to 
resigning, Plaintiff alleges more than an employer’s failure to acknowledge her complaints; 
she was informed by HR that there was nothing further to be done to rectify her situation. If 
an employee is informed that an employer has expressly decided against taking remedial 
action on her behalf, it makes little sense to say that employee ought to have stuck around 
waiting for the employer to change its mind. As such, Plaintiff’s claim that she suffered a 
hostile Dw.o rk eRnvaicreo/nCmoelonrt uDnisdcerri mCoiunnattsi oOnn e and Four survive the Motion to Dismiss. 

 While Plaintiff’s claims for race/color discrimination under Title VII and CFEPA are 
barred for failure to exhaust administrative remedies, Plaintiff also pleads race 
discrimination in Count Three alleging a violation of 42 U.S.C. § 1981. However, Plaintiff 
provides no allegations of any act of discrimination particularly tied to race or color, only 
noting that none of the Defendants are Black, and provides no legal authority for the 
proposition that the mere fact that she is Black and the Defendants are not constitutes 
sufficient grounds to maintain such a claim. Plaintiff’s Amended Complaint is rife with 
conclusory statements regarding racial discrimination but offers no allegation illustrating 
any actEu.a l inciRdeentat loiaf triaocnia l discrimination, and thus Count Three is dismissed. 

 Plaintiff’s allegation that she was constructively discharged in retaliation for making her 
complaint is also too conclusory to adequately state a claim. “[F]or a retaliation claim to 
survive . . . a motion to dismiss, the plaintiff must plausibly allege that: (1) defendants 
discriminated—or took an adverse employmenVt eagcati ovn. H—eamgpasintesat d[h Uenr]io, (n2 F) rbeeec aSuchse. D[sis]ht.e has 
opposed any unlawful employment practice.” , 801 
F.3d 72, 90 (2d Cir. 2015). Plaintiff pleads that she suffered an adverse employment action 
but fails to “plausibly plead a conIndection between the [adverse] act and [the plaintiff's] 
engagement in protected activity.” . 
 To be sure, Plaintiff pleads that Defendants failed to take steps to remedy a hostile work 
environment – this is why Plaintiff has adequately pled her hostile work environment claim 
based on sex-based discrimination at this stage. But the failure of Defendants to remediate 
the harassment Plaintiff faceSde eis W nohtid tbheee s va.m Gea rthzainrge lalis F roeotadl iSaptiencgia altgiaeisn, sInt ch.er because of her 
reporting that harassment. , 223 F.3d 62, 74 
(2d Cir. 2000) (“As ineffective or even incompetent as [a manager’s] handling of the matter 
may have been, it does not rise to the leveGl oonfz daelelizb evr. aNtee wa cYtioornk rSetqauteir eDde pb'yt oouf rC porrre.c eSderevnst. 
[Fpisehrktaililn Cinorgr .t Foa ccoilnitsytructive discharge]”); 
 , 122 F. Supp. 2d 335, 346 (N.D.N.Y. 2000) (“[T]the Complaint alleges an 
ongoing course of discriminatory treatment by Reilly, which began before she ever 
complained about his conduct and continued thereafter, and the failure of DOCS and Fishkill 
to take appropriate remedial action.b Tehcaerues esimply are no factual allegations that Reilly, DOCS, 
or Fishkill acted, or failed to act, Plaintiff complained about Reilly.”) (emphasis 
abdecdaeuds)e. Plaintiff has not pled suIfdfi. cient allegations that Defendants “acted, or failed to act, 
 F P. laintIifnf tceonmtipolnaianle Idn[f.l]i”c tioAns o sfu Ecmh, odtiisomniasls aDl iisst wreasrsr anted. 

 "[I]n order to establish a claim for intentional infliction of emotional distress, the plaintiff 
must establish four elements: (1) that the actor intended to inflict emotional distress or that 
he knew or should have known that emotional distress was the likely result of his conduct; 
(2) that the conduct was extreme and outrageous; (3) that the defendant's conduct was the 
cause of the pSleapinegtiaff vs. dDiesltaruesrsa; and (4) that the emotional distress sustained by the plaintiff 
was severe." , 326 Conn. 788, 800 n.6 (2017). “Liability has been found only 
where the conduct has been so outrageous in character, and so extreme in degree, as to go 
beyond all possible bounds of decenHcilyl , va. Pnidn kteor tboen Sreecguarridtye d& iansv easttriogcaitoiouns , Searnvdic eust,t Ienrcly 
intolerable in a civilized community.” ., 
977 F. Supp. 148, 159 (D. Conn. 1997). "[W]hether the defendants conduct may reasonably 
be regarded as extreme and outrageous is a question in the first instance, fBorr o[wthne v] . cToouwrtn. 
Oofn Elya swt hHearded raemasonable minds can differ does it become an issue for the jury." 
 , 213 F.3d 625, 2000 WL 536156, at *2 (2d Cir. May 2, 2000). 
 “Although conduct alleged to be sexual harassment and/or discrimination on the basis of 
a plaintiff's protected status often gives rise to a claim of IIED, the coexistence of the two 
claims does not esStaanbgliasnh vt.h Yaat lsee xUunaivl .h, arassment and/or discrimination is per se extreme 
and outrageous.” No. 3:06CV587 (PCD), 2006 WL 2682240, at *5 (D. 
Conn. Sept. 15, 2006). Defendants argue that no reasonable jury could find that any of the 
alleged behaviors, including those alleging that Defendant Ortiz conditioned work-related 
assistance onS esee,x uea.gl. faPvootrtise, rvi.s eA ttlo. Ptahcek hagigihng b aGrr po.,f L“aLtCrocious” behavior that is “utterly 
intolerable.” , , No. 3:12CV773 WIG, 2012 WL 
6087282, at *3 (D. Conn. Dec. 6, 2012) (IIED claim legally sufficient when plaintiff alleged 
being physically struck in the head and face and “subjected to a course of verbal abuse and 
profanity, including being referred tMo obryr irsasceiya lvly. Yaanlde eUtnhinviecrasliltyy derogatory names and asked 
what banana boat she came off.”); , 268 Conn. 426, 428 (2004) 
(rejecting IIED claim where plaintiff’s co-worker and co-worker’s boyfriend made repeated 
derogatory comments to plaintiff and, on one occasion, defendant pointed at plaintiff and 
said: “’[s]ooner or later I’m going to kick your f***ing a**”). 
 Connecticut courts have generally concluded that in order for “acts relatinMga tjoe wssekxiu avl. 
cBorniddguecpto” rtt oB dc. oonf sEtdituucte IIED, they must be either “particularly egregious”, 
 ., No. CV030406893J,a 2co0b0s5o Wn L v4. 69I1n3t'5l , aTto *u1r9s (C&o nnE. vSeunptes,r . CLtL. JCan. 20, 
2005), “continuous and constant,” , No. 
NNHCV095029826S, 20C1o1m WpaLr e3 4M8a3j6ew06sk, ia, t *10 (Conn. Super. Ct. July 11, 2011), or some 
combination of the two. 2005 WL 469135 (finding that several instances 
of unwanted hugging and kissing, in addition to inappropriate comments about sexual 
 with Lin v. Yale Univ., 
orientation and sexual fantasies, did not rise to the level of IIED) No. CV 
960384551S, 1998 WL 573250, at *3 (Conn. Super. Ct. Aug. 25, 1998) (finding that the 
plaintiff had sufficiently alleged an IIED claim where she alleged “daily, unwanted physical 
contact which was sexual, harassing and discriminatory in nature; a threatening statement 
regarding working after hours; and termination after reporting this behavior to her 
supervisor”). Although “the appalling condWucht idablleeeg evd. Gina rpzariroerl lic aFsoeosd sShpoeuclida ltnioest, bInec taken 
mark the boundary of what is actionable”, ., 223 
F.3d 62, 70 (2d Cir. 2000), the instances of harassment described by Plaintiff—while 
unquestionably inappropriate, and sufficient to support her claim that her conditions of 
employment were altered for the worse—do not rise to the level of a continuous pattern of 
degrading or egregious conduct that is “so outrageous in character, and so extreme in degree, 
as to go beyond all possible bounds of dHeiclelncy, and to be regarded as atrocious, and utterly 
intolerable in a civilized community.” , 977 F. Supp. at 159 (D. Conn. 1997). As such, 
Plaintiff’s Count Ten for intentional infliction of emotional distress is dismissed. 
IV. Conclusion 

 For the foregoing reasons, Defendants’ Motion to Dismiss is DENIED with respect to 
Plaintiff’s sex/gender discrimination claims in Counts One and Four and is GRANTED with 
respect to all other counts. 
 IT IS SO ORDERED. 

 __________/s/______________________ 
 Janet Bond Arterton, U.S.D.J. 

 Dated at New Haven, Connecticut this 16th day of August 2023.